UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AALAELDIN KHIRAWI,
Plaintiff

v.

GETRONICS WANG CO., LLC,
a/k/a/ and d/b/a GETRONICS,
Defendant

CIVIL ACTION NO. 05-11877WGY

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Getronics Wang Co., LLC, a/k/a and d/b/a Getronics ("Getronics" or the "Company") submits this Memorandum of Law in Support of its Motion for Summary Judgment.

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, a former employee in Getronics' Tewksbury, Massachusetts office, alleges that he was terminated from his employment and retaliated against because he complained about discriminatory employment practices. In reality, however, Plaintiff was discharged in October 2004 after many months of obstreperous, disrespectful and grossly insubordinate conduct toward his manager and other superiors. Plaintiff also failed to follow clear directives concerning a series of documented behavioral problems. Finally, Plaintiff sent many inappropriate emails to his co-workers and supervisors, including calling his supervisor "weak" and repeatedly failing to answer simple questions or to abide by clear directions. As set forth in Defendant's Statement of Undisputed Material Facts, Plaintiff was given numerous opportunities to remedy his behavior problems over a nine-month period – he received a written reprimand, a performance improvement plan, another written reprimand, a performance expectations document and then a final written reprimand. The Company ultimately terminated Plaintiff's employment on October 26, 2004, after a telephone meeting with a Getronics' Human Resources professional, during

which Plaintiff was grossly insubordinate and once again refused to cease arguing an issue he had been counseled about many times.

Plaintiff cannot raise a genuine issue of material fact with respect to his sole claim of retaliation because there is no probative evidence that Getronics' legitimate reasons for disciplining Plaintiff and eventually terminating his employment were merely a pretext for unlawful retaliation. Indeed, Plaintiff's sworn deposition testimony precludes him from raising a genuine issue of fact on his claim of retaliation. Specifically, Plaintiff admitted at his deposition that he sent the improper emails at issue, he did not abide by the directives of his supervisors, he was insubordinate and inappropriate at Getronics, he continued to disobey repeated directives during the October 26, 2004 call with Human Resources, and that Getronics had the right to discipline or even terminate him for such conduct. There being no genuine issue of material fact in this case for trial, Getronics is entitled to summary judgment as a matter of law.

## ARGUMENT

### I. THE STANDARD FOR SUMMARY JUDGMENT AND THE EVIDENTIARY BURDENS IN EMPLOYMENT DISCRIMINATION CASES

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well settled that the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . In essence . . . the inquiry . . . is. . .whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-253 (1986). Thus, "'[t]he mere existence of a scintilla of evidence' in the nonmoving party's favor is insufficient to defeat summary judgment." Gonzalez–Pina v. Guillermo Rodriguez, 407 F.3d 425, 431 (1st Cir. 2005) (citing Anderson, 477 U.S. at 249-52). Genuine issues of material fact cannot be conjured by a non-moving party who is merely speculating as to what evidence *might* be produced at trial. On issues where the non-movant bears the burden of proof, he must present definite, competent evidence to rebut the dispositive motion. See Anderson, 477 U.S. at 256-257.

Disputes where concepts such as motive or intent are at issue do not foreclose the possibility of summary judgment. Summary judgment can be, and often is, appropriate in employment discrimination cases where the party resisting judgment "rests merely upon conclusory allegations, improbable inferences and unsupported speculation." Feliciano De La Cruz v. El Conquistador Resort, 218 F.3d 1, 5 (1st Cir. 2000) (citation omitted). See Gonzalez-Pina, 407 F.3d at 431; Ronda-Perez v. Banco Bilbao Vizcaya Argentaria, 404 F.3d 42, 44-47 (1st Cir. 2005); see also Williams v. Raytheon Co., 220 F.3d 16, 21 (1st Cir. 2000) ("To succeed on a claim for retaliatory discharge, . . . 'there must be competent evidence that . . . a retaliatory motive played a part in the adverse employment actions alleged.'") (citation omitted); Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002) (finding summary judgment for employer appropriate when the plaintiff presents a "weak issue of fact as to pretext" and there is "strong independent evidence that no discrimination occurred.").

## II.  PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION BECAUSE HE CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN THE PROTECTED ACTIVITY AND DEFENDANT'S ACTIONS.

While Plaintiff's complaint alleges separate retaliation claims under Title VII, 42 U.S.C. §2000e et seq. (Count I) and Mass. Gen. L. ch. 151B, § 4(4) (Count II), the analysis of both claims is governed by the identical burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Mole v. University of Massachusetts, 442 Mass. 582, 591-92, 814 N.E.2d 329, 338-39 (2004).

To establish a *prima facie* case of retaliation, under both Title VII and Mass. Gen. L. ch. 151B, a plaintiff must show that: (1) he engaged in protected conduct; (2) he was subsequently subjected to an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. See Rodriguez v. Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st Cir. 2005); McMillan v. Mass. Soc. Prev. of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998); Mole, 442 Mass. at 591-592, 814 N.E. 2d at 338-39.

Here, Plaintiff cannot establish a *prima facie* case of retaliation, because he cannot show any causal connection between his protected activity – complaining of discrimination – and the Company's decision to discipline and ultimately discharge him.[1] As this Court has recognized, "[t]he mere fact that an adverse employment action followed protected conduct is not sufficient to make out a causal link between the two events." Iorio v. Aramark Servicemaster, 2005 U.S. Dist. LEXIS 40290, at *68 (D. Mass. 2005). See also Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 58 (1st Cir. 2000) (it is insufficient for the plaintiff "to simply recount that [he] complained and. . . was disciplined.") (quotation omitted) (ellipsis in original).

Plaintiff first complained of discrimination by Getronics in August of 2000. (Defendant's Statement of Material Facts Not in Dispute in support of its Motion for Summary Judgment, ¶ _ (hereinafter "SOF ¶ _")). Plaintiff's discharge from Getronics did not occur until *over four years later*, on October 26, 2004.[2] (SOF ¶62). Such a significant time lapse does not give rise to an inference that his complaints of discrimination were causally related to his discipline or termination for purposes of establishing a *prima facie* case of retaliation. See, e. g., Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st. Cir. 1991), cert. denied, 504 U.S. 985

---

[1] In addition, Plaintiff cannot establish a *prima facie* case of retaliation with respect to some of his internal complaints of discrimination because of the inappropriate manner in which he complained. See Hochstadt v. Worcester Foundation for Experimental Biology, 545 F. 2d 222 (1st Cir. 1976) and discussion at pp. 13-14, infra.

[2] Plaintiff made several additional complaints of discrimination against Getronics, both internally and externally, starting in December 2003 through his filing a formal charge of national origin discrimination and retaliation with the EEOC on June 10, 2004. (SOF ¶¶11-13,30,35). These complaints also occurred months prior to Plaintiff's October 26, 2004 termination.

(1992)(affirming summary judgment for employer on plaintiff's retaliation claim because the nine-month period between plaintiff's protected conduct and the adverse action suggested the absence of any causal connection), citing Oliver v. Digital Equipment Corp., 846 F. 2d 103, 110-11 (1st Cir. 1988)(long period of delay between initial EEOC complaint and ultimate discharge negates inference of retaliation); Sherwood v. Prison Health Servs., 2003 U.S. Dist LEXIS 22208 at *79-80 (D.Me 2003)("a substantial lapse of time between the protected activity and the adverse employment action is *counter-evidence* of any causal connection") (emphasis added), citing Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 399 (7th Cir. 1999) (citation omitted) (lapse of four months; no causal connection).

Even if the Court were to consider the temporal proximity between Plaintiff's June 10, 2004 EEOC charge and his October 26, 2004 termination, Plaintiff cannot prevail. First, a four and a half month time period is not by itself sufficient evidence of temporal proximity. See Cooper v. City of North Olmstead, 795 F.2d 1265, 1272 (6th Cir. 1986) (mere fact that bus driver was discharged *four months* after she filed discrimination claim was insufficient to support an inference of retaliation). Second, even assuming it is close enough in time to meet the *prima facie* test, if the only evidence of retaliation plaintiff can present is the proximity between the challenged employment decision and the protected activity, and if the employer offers a legitimate, non-retaliatory reason for the decision, the employee cannot defeat summary judgment. See, e.g., Roberson v. Alltel Info. Servs., 373 F.3d 647, 655-56 (5th Cir. 2004) (noting that timing alone may not be enough to establish a *prima facie* case and finding summary judgment in favor of employer appropriate where only evidence of retaliation was timing) (citing Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471-72 (5th Cir. 2002)); Dollar v. Shoney's, Inc., 981 F. Supp. 1417, 1420-22 (N.D. Ala. 1997) (FMLA case holding that timing alone, in absence of a fact issue on pretext, will not defeat summary judgment), citing Dillon v. Carlton, 977 F. Supp. 1155, 1160 (M.D. Fla. 1997).

**III.    EVEN IF PLAINTIFF COULD ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION, GETRONICS HAS ARTICULATED LEGITIMATE NON-RETALIATORY REASONS FOR PLAINTIFF'S DISCIPLINE AND DISCHARGE AND PLAINTIFF CANNOT SHOW PRETEXT.**

Assuming *arguendo*, that Plaintiff could establish a *prima facie* case of retaliation, Getronics nevertheless is entitled to summary judgment on both counts of Plaintiff's complaint because, as set forth below, it has articulated legitimate non-retaliatory reasons for Plaintiff's discipline and discharge, and Plaintiff cannot show pretext.  See McDonnell Douglas Corp, 411 U.S. at 802. An employer's ability to rebut the *prima facie* case with a legitimate non-retaliatory basis for its decisions destroys any previous presumption of retaliation.  See Smith v. F.W. Morris and Co., 76 F.3d 413, 421 (1st Cir. 1996) (once the employer puts forward a legitimate, non-discriminatory motive for its actions, the rebuttable presumption that discrimination sparked the adverse employment action vaporizes).

**A.    Plaintiff's Retaliation Claims Are Limited By The Applicable Statute Of Limitations To Actions Taken By Getronics After June 11, 2004.**

Plaintiff filed his charge of discrimination on April 11, 2005. (SOF ¶66). Title VII and G.L. ch. 151B both provide that an administrative charge of retaliation must be filed within 300 days of the alleged discriminatory act (see 42 U.S.C. § 2000e-5(e)(1) and Mass. Gen. L. ch. 151B, § 5). Therefore, Plaintiff cannot challenge any conduct by Getronics prior to June 11, 2004 as retaliatory or discriminatory, because his pending lawsuit is not based on an administrative charge filed within 300 days of any such actions.[3]

Subsequent to June 11, 2004, the only potentially material adverse employment actions concerning Plaintiff were his August 19, 2004 Performance Expectation document, his October 26, 2004 written reprimand, and his discharge on October 26, 2004. (SOF ¶¶40-42, 44-62). As

---

[3] Notwithstanding the fact that Plaintiff is time-barred from seeking relief as a result of Getronics' actions prior to June 11, 2004, Getronics had legitimate non-retaliatory bases for all of its actions regarding Plaintiff, regardless of the timing. (See SOF, ¶¶5-34).

set forth below, Getronics has presented legitimate non-retaliatory reasons for each of these actions.

**B.    Plaintiff's History of Insubordination and Inappropriate Conduct Leading To The August 19, 2004 Performance Expectation Document.**

Although Plaintiff disputes whether he received a copy of the August 19 "Performance Expectations" document on that date, he does not dispute that he was, in fact, counseled on that date by Jamie Graceffa of Getronics Human Resources Department and James Hoffmann, Plaintiff's supervisor's supervisor. (SOF ¶¶40--42). It is also beyond dispute that the August 19th counseling document was prepared in response to months of obstreperous, inappropriate, and/or grossly insubordinate conduct by Plaintiff. (SOF ¶¶15-20,22-34,36-39). In this regard, and as set forth in greater detail in Defendant's Statement of Undisputed Material Facts, Plaintiff engaged in the following documented inappropriate behavior in the months leading up to the August 19th counseling session:

- February 23, 2004 - Plaintiff emails co-worker (and his entire team) the co-worker was "wasting [Plaintiff's] time" and demands an apology from co-worker. When Plaintiff's supervisor, Ms. Miles, emails an apology on behalf of Plaintiff, Plaintiff again emails the entire team stating, "Ruby, My tone was professional enough and I did not ask you to apologize for me." (SOF ¶¶15-17).

- March 1, 2004 - Plaintiff is issued a written reprimand. (SOF ¶18).

- March 9, 2004 - Plaintiff emails a "rebuttal" to the reprimand to Ms. Miles (copying Getronics' Human Resources) in which he tells her that he does not trust her judgment as manager and that she is "weak". (SOF ¶19).

- March 18, 2004 - Plaintiff refuses to answer Ms. Miles' simple e-mail inquiry as to whether he is working from home on Mondays. (SOF ¶22).

- March 19, 2004 - Plaintiff issued cease and desist email from Getronics' Human Resources, requesting that he stop the inappropriate interactions with Ms. Miles and not to respond by email to the cease and desist email. (SOF ¶¶23-24).

- March 19 and 20, 2004, notwithstanding directive to Plaintiff to abide by directives and not respond to the March 19 cease and desist email, Plaintiff emails several times in response. (SOF ¶24).

- March 23, 2004 - Plaintiff placed on Performance Improvement Plan ("PIP") requiring that he respond politely to all requests and directives from his manager, cease his deluge of email, communicate with his manager in a professional and measured manner, and focus on his job without anger. (SOF ¶25).

- March 29, 2004 through May 17, 2004 - Plaintiff takes an approved medical leave of absence and partial leave of absence. (SOF ¶27).

- May 17 and 18, 2004 - Plaintiff once again disobeys Ms. Miles' directive that a certain "discussion is closed." Plaintiff replies with another insubordinate email stating, "it is clear that you are out of control and now this conversation is closed." (SOF ¶¶28-29).

- May 21, 2004 - Plaintiff receives second written reprimand. (SOF ¶¶31-32).

- May 24 - 26 2004 - Plaintiff refuses to give back Getronics' laptop computer he has been using, again engaging in a protracted e-mail campaign before finally returning the computer several days later. (SOF ¶34).

- August 5, 2004 - Plaintiff engages in another insubordinate email exchange with his supervisor. Specifically, after Ms. Miles emails, "Please do not respond to this email. That is a directive. I will not tolerate back and forth discussion on these or any other directives," Plaintiff responds, "I do not understand that you keep giving me directive after directive." (SOF ¶36).

Since Plaintiff does not and cannot deny he engaged in the behavior referenced above, Plaintiff cannot dispute Getronics' legitimate non-retaliatory reason for giving him the August 19 Counseling.

## C.  **Plaintiff's Further Inappropriate Behavior Forms The Basis For The October 26, 2004 Written Reprimand.**

On August 19, a meeting was convened with Plaintiff, Jamie Graceffa of Getronics Human Resources Department and James Hoffmann, Ms. Miles' supervisor, in order to present the August 19 Counseling to him. (SOF ¶¶40-42). Notwithstanding this meeting, in late September 2004, Plaintiff claimed that he never received the August 19 Counseling. (SOF ¶45). Mr. Graceffa disagreed and told him he gave him the document at the August 19 meeting. (SOF ¶45). Plaintiff continued to disagree with Mr. Graceffa concerning this point. (SOF ¶¶45-48). In order to try to bring closure to this dispute, Plaintiff was given another copy of the August 19th counseling, which Plaintiff admits that he received. (SOF ¶45). Notwithstanding his receipt of

the document, Plaintiff continued to argue that he did not receive the document on August 19, even after Mr. Graceffa insisted that he stop arguing this issue and warned Plaintiff that if he continued to argue this issue, he would be disciplined.    (SOF ¶¶45-48).    In e-mail communications between September 28 and 30, Plaintiff engaged in flagrant and continuous insubordination. (SOF ¶¶46-48). On September 29, Mr. Graceffa stated:

> I will repeat for the last time: this issue is closed. You should understand, my directive to you yesterday was for you to relent on your insistence that you never saw the document previously. That is a fabrication. You continue to argue the point. If you respond to the point of when you first received the document one more time, you will receive a written warning.

(SOF ¶47). Plaintiff once again did not follow the directive and emailed a reply stating, "It is not fabrication Mr. Graceffa, and you very well know that.  And no amount of accusations and threats from your part would change this fact." (SOF ¶47).

On September 30, when Mr. Graceffa again emailed Plaintiff on this subject, stating:

> You continue to press this point with me notwithstanding my clear directive that you cease. You will receive a written warning on this matter.    This is an example of unprofessional and inappropriate conduct. Please be advised that your immediate and sustained improvement is a requirement of continued employment with Getronics . . . this matter is closed. Please do not reply to this email. That is a directive.

(SOF ¶48). Plaintiff again refused to abide by the directive, replying "you can issue warnings and more than that, but that would not change the fact that, you have not been correct when you said the document was presented to me in the meeting on Thursday the 19th ." (SOF ¶48).

As a result of Plaintiff's continued and documented argumentativeness and insubordination, a third written warning was prepared, dated October 26, 2004. (SOF ¶¶49-53). The written warning addressed the following performance issues:  (a) Plaintiff's denial that he received the August 19 Counseling on August 19, 2004; (b) Plaintiff's unwillingness and/or inability to acknowledge a differing viewpoint; (c) his unwillingness and/or inability to cease an argument and stop his relentless cycles of email even after explicitly being directed to do so; and

(d) his argumentative, rude and disrespectful communication style. (SOF ¶51). In addition, the document set forth the following directives in clear bolded writing:

- **"You will respect the views of others."**

- **"You will abide future directives to cease discussion."**

- **"You will improve your argumentative, rude and disrespectful communication style."**

- **"You will behave professionally in the workplace."**

(SOF ¶53). The document also stated, "None of the above conduct is acceptable. You must improve on each of these points immediately. Your job is in jeopardy." (SOF ¶53). Regarding the issue of when Plaintiff received the August 19 warning, the document stated: "There will be no further debate on this issue. This subject is closed. **You will cease to argue this fact.**" (SOF ¶52). Incredibly, Plaintiff refused to abide by this directive and continued to argue with Mr. Graceffa about this issue. (SOF ¶¶56-57). As Plaintiff does not deny he sent the emails in question, he cannot dispute Getronics' legitimate non-retaliatory basis for preparing the October 26 written reprimand.

### D. The Events Leading To The October 26, 2004 Decision To Terminate Plaintiff's Employment.

After receiving the October 26 warning with its clear directives, Plaintiff again emailed to Mr. Graceffa in response that he had not received the August 19 warning on August 19. (SOF ¶56). After sending this email, Plaintiff called Mr. Graceffa. The following are undisputed facts concerning the telephone call between Plaintiff and Mr. Graceffa.[4] (SOF ¶¶57-60).

---

[4] To the extent Plaintiff claims there is a factual dispute regarding exactly what transpired during this call, Getronics submits that any differences between the recollections of Mr. Graceffa and Plaintiff do not arise to the level of material facts in dispute. While the recollection of the witnesses may differ regarding some of the details of the conversation, as set forth above, there are sufficient facts which are not in dispute to support Getronics' legitimate non-retaliatory basis for its decision to terminate Plaintiff's employment immediately after the call. A "material fact" is a "contested fact [that] has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.'" Sherwood, 2003 U.S. Dist LEXIS 22208, at *45-45, quoting Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001), quoting in turn McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). Thus, since the disagreements regarding certain details of the call do not change the outcome, summary judgment is still appropriate.

During the call, Plaintiff continued to insist, repeatedly, that he had not received the August 19 warning on that date. Indeed, Plaintiff admits that he "kept saying [he] never received" the August 19 Performance Expectations Plan on August 19. (SOF ¶57).

> Q:   What did you say exactly, that I disagree?
>
> A:   I think I was – no, I was saying, "No, sir. No, sir. You did not. No, sir. You did not." And I – I just kept saying that, I think.
>
> Q:   And when you say, "You did not," meaning, you did not give me that document on August 19, 2004?
>
> A:   Correct.

(SOF ¶57). As the call progressed, Plaintiff would not allow Mr. Graceffa to speak, while Plaintiff spoke in a raised, disrespectful and "menacing" tone to Mr. Graceffa.[5] (SOF ¶58). Indeed, Plaintiff admits there was disagreement between him and Mr. Graceffa during this call and that Mr. Graceffa was upset. (SOF ¶58). The teleconference ended when Mr. Graceffa told Plaintiff he would complete the communication in writing, and Plaintiff hung up the phone on him. (SOF ¶59). Immediately after the call, Mr. Graceffa reported Plaintiff's behavior during the call to Getronics' upper-management. (SOF ¶61).

### E.   Plaintiff Was Terminated For Documented Continued And Flagrant Inappropriate Conduct In The Workplace.

After learning of Plaintiff's call with Mr. Graceffa, Getronics' Vice President of Human Resources Wayne Ogg decided to terminate Plaintiff's employment immediately, on the basis of his continued and flagrant inappropriate conduct. (SOF ¶61). Prior to and during the October 26, 2004 call with Mr. Graceffa, Plaintiff was not told that his employment was going to be terminated that day. (SOF ¶60). He was told, however, that his job was in jeopardy and that he needed to cease his inappropriate behavior immediately. (SOF ¶53). Notwithstanding this clear

---

[5] The Plaintiff's threatening tone during this call so unnerved Mr. Graceffa, an experienced Human Resources professional, that he was concerned for his personal safety and for the rest of that week would not leave work alone to walk to his car. (SOF ¶¶58-59).

final warning, it is undisputed that Plaintiff continued to behave in the same inappropriate, insubordinate way both immediately prior to and during the call with Mr. Graceffa. (SOF ¶¶55-59). In fact, Plaintiff was so flagrant in his refusal to abide by the October 26 written reprimand, that Mr. Ogg felt he had no choice but to terminate his employment immediately. (SOF ¶61).

F.  **Numerous Reported Decisions Have Granted Summary Judgment To The Employer Based On Analogous Facts.**

The undisputed record evidence establishes that Plaintiff was terminated from his employment after a documented series of recurring inappropriate and insubordinate behaviors and related problems for which he had been previously disciplined. Getronics' stated reason for giving Plaintiff warnings and subsequently terminating Plaintiff's employment -- insubordination -- is an established legitimate non-retaliatory rationale. See Mesnick, 950 F.2d at 825. In Mesnick, the First Circuit affirmed the district court's entry of summary judgment on behalf of the employer in a case remarkably similar to the case at bar. Like Plaintiff, Mesnick brought claims of discrimination while still employed at G.E. Id. at 828. Also, like Plaintiff, Mesnick was insubordinate and inappropriate in the workplace, which led to his termination after committing yet another act of defiance. Id.

Moreover, as in Mesnick, Plaintiff here was not immunized from legitimate disciplinary action or termination simply because he complained or otherwise attempted to exercise his rights under Title VII or analogous state law. Such complaints do not "clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers." Id. at 828-29, citing Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir.), cert. denied, 488 U.S. 892 (1988); See also Mole, 442 Mass. at 592. To the contrary, although Plaintiff engaged in insubordination and inappropriate conduct independent of his claims of discrimination, courts have found that even if the

insubordination relates to potentially protected activity, it is not unlawful for an employer to take

action against the employee for the manner in which the complaint is made.[6]

Other cases illustrate that summary judgment should be granted to the employer where, as here, an employee engages in gross insubordination and disruptive conduct, notwithstanding the fact that the employee has complained of discrimination. For example, in Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222 (1st Cir. 1976), the court evaluated whether the plaintiff's hostile manner in opposing the employer's allegedly unlawful employment practices was protected "opposition" conduct. Id. at 229. The First Circuit affirmed the district court's holding that the plaintiff's protests were "insubordinate and excessive." Id. at 230. The court held that "[i]n the employment setting . . . the employer had a particular interest in maintaining a harmonious and congenial working environment conducive to the interchange of ideas[.]" Id. at 233. Ultimately, employees should not be allowed "to invoke the protection of [a retaliation statute] . . . for conduct aimed at even proper objectives through the use of improper means." Id. at 231.

Likewise, in Pagana-Fay v. Washington Suburban Sanitary Comm., 797 F. Supp. 462 (D. Md. 1992), the court observed, similar to the case at bar, that:

> Plaintiff was discharged because of her continuing insubordination and her repeated refusal to accept criticism and comply with orders of her male superiors. She repeatedly challenged and ignored her superiors' orders and refused to cooperate with directives with which she disagreed. . . [a]lthough plaintiff had every right to speak out on behalf of her cause and to be the activist that she was,

---

[6] Under the balancing test adopted by every Circuit Court of Appeal to address the issue, "if . . . the manner in which the employee complains or acts is found to be unreasonable, it is unprotected; the employee's conduct then may be deemed an independent, legitimate basis for the adverse employment action." Campbell v. Abercrombie & Fitch, Co., 2005 U.S. Dist. LEXIS 11507 at *18 and n.7 (D. N.J.), citing Matima v. Celli, 228 F.3d 68 (2d Cir. 2000); Robbins v. Jefferson County Sch. Dist., 186 F.3d 1253 (10th Cir. 1998); Hochstadt, 545 F.2d at 231; O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir. 1996); Rollins v. Florida Dep't of Law Enforcement, 868 F.2d 397, 401 (11th Cir. 1989); Jones v. Flagship Int'l, 793 F.2d 714, 728 (5th Cir. 1986), cert. denied, 479 U.S. 1065, 93 L. Ed. 2d 1001, 107 S. Ct. 952 (1987); Pendleton v. Rumsfeld, 202 U.S. App. D.C. 102, 628 F.2d 102, 108 (D.C. Cir. 1980).

> she went too far when she permitted her beliefs to adversely affect her day-to-day employment activities. . . otherwise protected conduct may be so disruptive or inappropriate as to fall outside the statute's protection. . . Title VII does not afford an employee unlimited license to complain at any and all times.

Pagana-Fay, 797 F. Supp. at 471-75. See also Laughlin v. Metro.Washington Airports Auth., 149 F.3d 253, 260 (4th Cir. 1998)("Title VII was 'not intended to immunize insubordinate, disruptive, or nonproductive behavior at work'") (citation omitted); Robbins, 186 F.3d at 1259 (employee who "lodged frequent, voluminous, and sometimes specious complaints and engaged in antagonistic behavior toward her superiors" was held not to have engaged in protected "opposition" activity).

## IV.   PLAINTIFF CANNOT PRESENT PROBATIVE EVIDENCE OF PRETEXT IN RESPONSE TO DEFENDANT'S PROFERRED LEGITIMATE REASONS FOR PLAINTIFF'S DISCIPLINE AND DISCHARGE.

Not only has Plaintiff failed to establish a *prima facie* case of retaliation, but Defendant is entitled to summary judgment for the additional and independent reason that Plaintiff has failed to produce probative evidence that Getronics' stated reasons for his discipline and discharge were *more likely than not* a pretext for retaliation. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Alvarez-Fonseca v. Pepsi Cola of Puerto Rico, 152 F.3d 17, 24 (1st Cir. 1998), cert. denied, 526 U.S. 1123 (1999) (it is employee's final burden to demonstrate that employer's explanation is false *and* that the real reason for defendant's actions is discrimination). At the summary judgment stage, the plaintiff "must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was [retaliation]." Quinones v. Houser Buick, 436 F.3d 284, 289-90 (1st Cir. 2006). Here, Plaintiff can do neither.

The record fails to create a triable issue as to whether Defendant's explanations for its actions were a pretext for retaliation. "A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." Ronda-Perez, 404 F.3d at 45 (citation omitted). In assessing whether the employer's

reason is a pretext, the court's "focus must be on the perception of the decisionmaker," i. e., whether the *employer* believed its preferred reason to be credible. Mesnick, 950 F.2d at 824; Griel v. Franklin Med. Ctr., 234 F.3d 731, 732 (1st Cir. 2000) ("the ultimate issue in a discrimination case is whether the [employer's] *reason* for discharging [the nurse] was because it *believed* that she was not a safe nurse") (emphasis in original). Thus, the issue is not whether the reason for terminating Plaintiff was real, but rather whether Defendant *believed* it was real. Ronda-Perez, 404 F. 3d at 45.

Conversely, it is not important if Plaintiff only *believes* that he was mistreated, or that the Company *may* have harbored an improper motivation. For example, Plaintiff's mere speculation that "[m]y performance has never been the issue, and thus I would conclude that my ethnicity, background and religion have," is insufficient to create an issue of pretext. (SOF ¶30). Plaintiff "cannot rely only on 'subjective feelings of disappointment and disillusionment' with the challenged decision or with [his] working conditions, and must 'do more than simply speculate that [defendant's] motive [was] sinister.'" Iorio, 2005 U.S. Dist. LEXIS 40290, at *51, citing Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 101 (1st Cir. 2002).

Nor can Plaintiff raise an issue of pretext by contesting the objective correctness or fairness of the employer's articulated reasons for its decision. Mesnick, 950 F.2d at 825 ("Courts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions."); McMillan v. Mass. Soc. Prev. of Cruelty to Animals, 140 F.3d 288, 309-10 (1st Cir. 1998) (affirming summary judgment for employer on plaintiff's retaliation claim because plaintiff had not demonstrated that the explanation for her termination was pretextual: "even if [decisionmaker] may have exercised arguably poor business judgment in terminating her, and in doing so in an abrupt, clumsy, and unfeeling manner, it would be unreasonable on the evidence for a factfinder to conclude that his explanation for the termination was, in fact, not the true reason").

A.   **Plaintiff Does Not Dispute The Facts Getronics Relied Upon In Deciding To Terminate His Employment.**

Here, Plaintiff cannot argue that Getronics' stated reasons for disciplining him or terminating his employment are pretextual, because he does not dispute the underlying facts supporting these actions. For example, Plaintiff admitted during his deposition that he was inappropriate and insubordinate in the workplace. (SOF ¶63). Plaintiff further admitted that, although he was required to abide by directives from his superiors at Getronics, he did not always follow these directives. (SOF ¶63). Plaintiff admitted that he would respond to emails from his supervisors or human resources even though he was specifically, repeatedly and clearly directed not to do so. (SOF ¶63). Plaintiff also admits that Getronics had a right to discipline him for such inappropriate and insubordinate behavior, and that he received multiple warnings from Getronics for this behavior before he was terminated. (SOF ¶64).

While Plaintiff has expressed a conclusory belief that his termination was a result of his having complained about discrimination, he has not and cannot present any probative evidence to rebut or undermine the Company's documentation establishing that he was terminated for his "continued and flagrant inappropriate conduct in the workplace." (SOF ¶73). Therefore, Plaintiff has no admissible evidence to challenge Getronics' legitimate non-retaliatory reasons for disciplining and eventually terminating him. See Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997) ("[Plaintiff] must do more than cast doubt on the rationale proffered by the employer, . . . the evidence must be of such strength and quality as to permit a reasonable finding that the termination was obviously or manifestly unsupported.").

B.   **Plaintiff's Positive Technical Skills Do Not Negate His Admittedly Inappropriate and Insubordinate Behavior.**

In support of his pretext argument, Plaintiff may claim that his technical job performance was never an issue, as evidenced by his positive performance reviews. This argument is insufficient to create a dispute of material fact. First, regarding Plaintiff's most recent review provided on March 1, 2004, Ms. Miles testified that she concentrated on his technical skills in

completing her analysis. (SOF ¶21). With respect to his insubordination, she (correctly) believed these issues were being addressed in documents other than the formal performance appraisal. (SOF ¶21). Second, even if Ms. Miles chose not to reference the attitude issues in the performance review, this does not mean such issues did not exist at that time. Indeed, as the undisputed record evidence confirms, Plaintiff's insubordinate and inappropriate behavior began with his February 23, 2004 email exchange regarding Patrick McHenry and Ms. Miles. (SOF ¶¶15-17). Finally, while Plaintiff's technical performance may have been adequate, it was his documented issues with interpersonal skills that resulted in his discipline and termination. (SOF ¶¶15-20,22-26,28-29,31-34,36-42,44-61). As stated above, Plaintiff does not dispute that he engaged in the inappropriate and insubordinate behavior in question. See p. 16, supra. Therefore, Plaintiff's positive technical performance reviews do not create a material dispute of fact sufficient to avoid summary judgment. See Mesnick, 950 F.2d at 825-26 (finding "plethoric evidence [illustrating employee's] professional competence and ability to work well with others" insufficient to prove employer's stated reason for terminating employee – blatant insubordination – was pretextual).

**C.** **The Dispute Concerning When The August 19 Counseling Document Was Actually Given To Plaintiff Is Not Material.**

Plaintiff alleges that he was never given the August 19 Counseling notice during his August 19 meeting with Mr. Graceffa. (SOF ¶¶45-48). This dispute is simply not material. Plaintiff admits that he was, in fact, counseled by Mr. Graceffa at a meeting on August 19th. (SOF ¶¶40-42). Further, Plaintiff admits that he did receive the document by email on September 28, 2004. (SOF ¶45). Once he received the document, there was no reason to continue to argue about *when* he received it. Indeed, Mr. Graceffa directed Plaintiff to stop arguing this fact numerous times, but Plaintiff simply refused to abide by these directives. (SOF ¶¶45-48). Plaintiff continued to argue this fact, right up to his termination. (SOF ¶¶45-48,56-57). Essentially, Plaintiff missed the point regarding this warning and Mr. Graceffa's attempt to

counsel him with respect to this issue. By October 26, it no longer mattered if Plaintiff received the August 19 Counseling document on August 19 or September 28. All that mattered was that he had been called into a meeting about performance issues on August 19, he received the written document at some point, and he was obligated to address his performance issues. Yet, instead of concentrating on meeting Getronics' expectations, Plaintiff continued to argue over the issue of when he received the document, which eventually contributed to his termination.

### D.    In Addition To An Inability To Prove Pretext, Plaintiff Has No Factual Basis For Alleging Retaliatory Animus And Getronics' Patient And Measured Treatment Of Plaintiff Defeats Any Such Allegation.

To prevail on the issue of pretext, Plaintiff must not only show the falsity of the Company's proffered explanation, but he also must prove that the employer was actually motivated by unlawful retaliatory animus. See Zapata–Matos, 277 F. 3d at 45 ("the ultimate question is not whether the explanation was false, but whether discrimination [or retaliation] was the cause of the termination.").

In this case, Plaintiff acknowledged at his deposition that the only two employees at Getronics who he believed retaliated against him were Ms. Miles and Mr. Graceffa.[7] Plaintiff's allegations do not raise an issue of fact as to any retaliatory animus by either of these individuals. Indeed, although Plaintiff admitted during discovery that he has lied under oath,[8] he has not

---

[7] Although Plaintiff also claimed that Getronics' Human Resources department "told" Ms. Miles to retaliate against him, he has no factual support for this allegation:

> Q. Are you testifying that HR told Ruby Miles to retaliate against you?
> A. I think so.
> Q. And you have no direct evidence of that, correct?
> A. I wouldn't know.

(SOF ¶74).

[8] Plaintiff admitted he lied in his sworn interrogatory responses and in Getronics' job application concerning the reason why he left a prior employer. While Getronics should be granted summary judgment on the complaint in its entirety, if Plaintiff is allowed to proceed to trial, Getronics should receive a ruling that his ability to recover lost wages is limited by the After-Acquired Evidence Doctrine, as Getronics would have terminated his employment for his material misrepresentation on the job application. See (SOF ¶¶67-68); McKennon v. Nashville Banner Publishing Co., 115 S.Ct. 879 (1995).

alleged any factual basis for finding Ms. Miles or Mr. Graceffa had any retaliatory animus. Instead, Plaintiff relies on insufficient supposition and conjecture. Gonzalez–Pina, 407 F.3d at 431 (summary judgment appropriate if the nonmoving party rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation.")(citation omitted). Regarding Mr. Graceffa, Plaintiff admitted he simply assumed that Mr. Graceffa had a retaliatory motive because he could not think of any other reason for Mr. Graceffa's actions.

> Q:    So your testimony is that everything that Mr. Graceffa did to you was a result of you having brought that discrimination complaint?
>
> A:    Correct.
>
> Q:    Because you can't imagine any other basis for why he did what he did?
>
> A:    Correct.

(SOF ¶73). With regard to Ms. Miles, the fact that she gave Plaintiff a favorable performance review a few weeks after he complained about her strongly undercuts a finding of retaliatory animus. (SOF ¶21). More importantly, Ms. Miles was not involved in the decisions to discipline or terminate Plaintiff subsequent to June 11, 2004, and therefore any claims relating to her conduct are immaterial and time-barred.[9]  (SOF ¶¶36-42.44-62).

Plaintiff's conjectural retaliation claim is also insufficient as a matter of law in light of the evidence of his fair treatment by Getronics subsequent to his bringing his claims of discrimination. If the Company had retaliatory animus, it would not have initially hired Plaintiff immediately after he brought his first complaint of discrimination in August 2000. (SOF ¶¶4-5). Similarly, it would not have promoted Plaintiff or given him such a substantial raise in August 2003, nor would it have given him a positive performance evaluation on March 1, 2004, mere weeks after he complained about discrimination. (SOF ¶21).

---

[9] To the extent Plaintiff relies on alleged statement by Ms. Miles in 2003 regarding the delay in his receiving a promotion, such allegations are insufficient to avoid summary judgment for several reasons. (SOF ¶69). First, any adverse actions allegedly linked to such statements are time-barred. See discussion, p. 6, supra. Second, the alleged statement in question does not indicate any discriminatory or retaliatory animus by Ms. Miles, herself. (SOF ¶69).

In addition, it is undisputed that Defendant did not act precipitously in terminating Plaintiff's employment, but attempted to remedy his performance problems by counseling him and utilizing progressive discipline over the many months. (SOF ¶¶15-19,22-34,36-42,44-62). It was only after the Company's remedial efforts were unsuccessful, and it became clear that Plaintiff was either unwilling or unable to change his performance and comply with the Company's clear directives, that the decision was finally made to terminate Plaintiff's employment (SOF ¶ 61). Thus, Getronics' patience with Plaintiff further supports the fact that no retaliatory animus existed. See Mesnick, 950 F.2d at 828 (finding no retaliatory animus where record indicated a "longstanding desire to improve an employee's behavior").

At foundation, Plaintiff simply cannot establish that Getronics' proffered legitimate reasons for the employment actions it took are a pretext, nor can he prove that retaliation was the *real* reason.

## CONCLUSION

Because Getronics has articulated legitimate, non-retaliatory reasons for Plaintiff's discipline and termination from employment, and because there is no probative evidence that the stated reasons are pretexts for unlawful retaliation, summary judgment should be entered for the Defendant on Plaintiff's Complaint in its entirety.

Respectfully submitted,

GETRONICS WANG CO., LLC,
a/k/a/ and d/b/a GETRONICS
By its attorneys,


/s/ Erik J. Winton
Andrew C. Pickett, BBO # 549872
Erik J. Winton, BBO #600743
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated: March 15, 2007

**CERTIFICATE OF SERVICE**

This hereby certifies that on this 15th day of March, 2007, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Erik J. Winton
Jackson Lewis LLP