UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11877-WGY

_____
                                        )
AALAELDIN KHIRAWI                       )
                                        )
        Plaintiff                       )
                                        )
v.                                      )
                                        )
GETRONICS WANG CO., LLC                 )
D/B/A GETRONICS                         )
                                        )
        Defendants                      )
_____)

**PLAINTIFF, AALAELDIN KHIRAWI'S MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Aalaeldin Khirawi (hereinafter "Mr. Khirawi"), and respectfully opposes the defendant 's Motion for Summary Judgment. As grounds for his opposition, Plaintiff states as follows:

I.      **INTRODUCTION**

The plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §. 2000e, et seq., and M.G.L. Chapter 151B, § 4(4) and 4(4A), against Getronics Wang Company, LLC (hereinafter "Getronics"), his former employer. Mr. Khirawi seeks redress for Getronics's termination of his employment in retaliation for protected activity under Title VII.

The pleadings of record, the deposition testimony of parties and witnesses, affidavits, and the documentary exhibits, all of which are attached to the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment filed herewith, establish that genuine issues of

material fact exist precluding summary judgment.

## II.    RELEVANT FACTS

Mr. Khirawi is a United States citizen originally from the Sudan.  He is an African Muslim.  (Ex. 44: Khirawi aff.).   Mr. Khirawi began employment with Getronics in approximately May, 1999, as a temporary employee.  (Ex. 44: Khirawi aff.).

### The first events leading Mr. Khirawi to reasonably conclude that he was a victim of discrimination

Mr. Khirawi received positive feedback from his supervisors during his temporary employment at Getronics.  Nevertheless, Getronics hired a Caucasian temporary employee named Gerald Tracy as a permanent employee despite that Mr. Tracy began his temporary employment four months after Mr. Khirawi. (Ex. 44: Khirawi aff.).  As a result of being "passed over" for Mr. Tracy, and of the lengthy period of the temporary status of his employment (15 months), Mr. Khirawi suspected that Getronics decision may have been related to his race and religion.  (Ex. 44: Khirawi aff.).

In August, 2000, Mr. Khirawi enlisted aid from a Washington based lobbying group, Council on American-Islamic Relations, to communicate to Getronics his suspicion that Getronics's failure to hire Mr. Khirawi as a permanent employee was race and religion based. (Ex. 44: Khirawi aff.).  On August 29, 2000, Getronics hired Mr. Khirawi as a permanent employee.  (Ex. 46: Getronics's Massachusetts Commission Against Discrimination ("MCAD") Position Statement, p. 4).

### Mr. Khirawi's performance during the first four and one-half years of employment – prior to his December, 2003 complaint of discrimination

During his first year of permanent employment, Mr. Khirawi continued to perform well. His Getronics's August 2001 performance review shows that Mr. Khirawi usually exceeded

Getronics's requirements in areas such as trust and respect for others; being open to feedback from others; demonstrating commitment to team goals; helping others to find solutions; establishing and maintaining effective working relationships; and evaluating feedback from "audience" and replying in a professional manner. (Ex. 1: August 2001 Getronics Performance Management Process Appraisal Form.) Mr. Khirawi did not receive any warnings or other personnel actions for insubordination or failing to communicate with his superiors or co-workers in a professional manner during his first years at Getronics.

Getronics's July, 2003 review of Mr. Khirawi's performance again shows that Mr. Khirawi usually exceeded Getronics's requirements in areas such as trust and respect for others; being open to feedback from others; demonstrating commitment to team goals; helping others to find solutions; establishing and maintaining effective working relationships; and evaluating feedback from "audience' and replying in a professional manner. (Ex. 4: July 2003 Getronics Performance Management Process Appraisal Form.)

In fact, at no time between his May 1999 hire as a temporary employee and early 2004, a period of over four and one-half years, did Getronics take any issue with Mr. Khirawi's professionalism, attitude, or ability to take direction from his supervisors without insubordinate behavior. (Ex. 44: Khirawi aff.).

**The second event leading Mr. Khirawi to reasonably conclude that he was a victim of discrimination**

In May, 2001, Getronics chose Mr. Khirawi and others for an off site project called the "AERO" project. Mr. Khirawi began to train for this project soon thereafter. (Ex. 44: Khirawi aff.). However, within weeks of the terrorist attack of September 11, 2001, Getronics removed Mr. Khirawi from the AERO project, under highly disputed circumstances. (Ex. 44: Khirawi

aff.).  Further, without explanation from Getronics, Mr. Khirawi remained without a place to

work for a period of approximately seven weeks in the fall of 2001; Getronics essentially

effectuated an involuntary paid leave of absence.  (Ex. 44: Khirawi aff.).  Given the nature of the

terrorist attacks of September 11, 2001 and the Muslim origin of the hijackers involved in the

attack, Mr. Khirawi suspected that Getronics's decisions to remove him from the AERO project

and to maintain him on leave of absence soon after the events of September 11, 2001, were based

on his Muslim religion and ethnicity. (Ex. 44: Khirawi aff.).  Mr. Khirawi was placed back at

Getronics's office in Tewksbury, Massachusetts in late 2001 or early 2002.

### Getronics's offer to promote Mr. Khirawi

In mid 2002, Paul Galipeau, Mr. Khirawi's manager, recommended Mr. Khirawi for a

promotion to a Quality Assurance Representative position.  (Ex. 44: Khirawi aff.).  In October

2002, Ruby Miles, a Houston based Quality Manager for Getronics, met with Mr. Khirawi at

Getronics's Tewksbury, Massachusetts office, for the purpose of interviewing Mr. Khirawi for a

position of Quality Assurance Representative.  (Ex. 44: Khirawi aff.; Ex. 42: Miles depo., p. 27).

Ms. Miles offered Mr. Khirawi the position of Quality Assurance Representative during

her meeting with him in October, 2002, at an annual salary of $40,000.00; Mr. Khirawi accepted

the position. (Ex. 44: Khirawi aff.; Ex. 42: Miles depo., p. 27).   At the time that Ms. Miles

offered Mr. Khirawi the position of Quality Assurance Representative, Ms. Miles understood

that she had the authority to do so, based on a conversation with her manager.  (Miles depo., p.

45).

At the time that Ms. Miles offered Mr. Khirawi the position of Quality Assurance

Representative, Ms. Miles expected that Mr. Khirawi would begin his new position and salary

within a few weeks.  (Miles depo., p. 42-43).  There was, however, significant unexplained delay

4

in the actual implementation of Mr. Khirawi's promotion and salary increase. Several weeks went by after Ms. Miles's job offer to Mr. Khirawi, and Mr. Khirawi often inquired as to the reason for the delay. Ms. Miles never offered Mr. Khirawi a clear answer as to the reason for the unusually significant delay. (Ex. 2: e-mails between Mr. Khirawi and Ms. Miles regarding the status of Mr. Khirawi's promotion, spanning January 14, 2003 through April 1, 2003).

In February, 2003, Getronics, through Mr. Galipeau, Mr. Khirawi's manager in Tewksbury, asked Mr. Khirawi to begin performing the duties of the Quality Assurance Representative position. (Ex. 44: Khirawi aff.). Mr. Khirawi agreed to perform the duties of the Quality Assurance Representative position despite that his salary would remain at $27,000.00, in order to assist Getronics and to help further his career with Getronics. He performed those duties without the appropriate salary from February, 2003 until September, 2003. (Ex. 44: Khirawi aff.; Ex. 42: Miles depo., p. 29-30). Even Ms. Miles, a fourteen year manager at Getronics, is not aware of any other examples of Getronics employees who performed duties of a position without receiving the position's title and salary. (Ex. 42: Miles depo., p. 30).

On March 7, 2003, apparently in an effort to keep Mr. Khirawi interested in the position, Ms. Miles offered Mr. Khirawi the option of a four day work week, as all other subordinate employees in her group had. (Ex. 2: e-mail of March 7, 2003, Bates stamped number GETR0620).

### The third event leading Mr. Khirawi to reasonably conclude that he was a victim of discrimination

On March 19, 2003, in the context of e-mails between Mr. Khirawi and Ms. Miles about the status of Mr. Khirawi's delayed promotion, Ms. Miles, an African American woman, told Mr. Khirawi that she could identify and feel Mr. Khirawi's pain, having been born and raised in the 1950's, 60's and 70's. Mr. Khirawi understood this comment to mean that the delay in his

promotion may have been somehow linked to his race and religion, given that the 1950's and 1960's in the United States was a tumultuous period in the nation's history as it relates to race relations.  (Ex. 2: e-mail of March 19, 2003, Bates stamped number GETR0617; Ex. 44: Khirawi aff).

In June, 2003, Mr. Khirawi discussed the ongoing delay in his promotion (seven months had passed since the offer had been made) with Ms. Miles during a Tewksbury training session that they both attended.  Ms. Miles told Mr. Khirawi that she thought that the delay in his promotion and salary raise was due to racial factors, saying something like "it is all racial Aalaeldin, it is because you are black, welcome to the club."  (Ex. 44: Khirawi aff.).  At the time of Ms. Miles's comment in June, 2003, Mr. Khirawi was unsure whether Ms. Miles was simply commiserating with him in an effort to make him feel better, or whether Ms. Miles had actual knowledge of race based action on the part of Getronics upper management. As such, he did not immediately report the comment to any superiors or Human Resources.  (Ex. 44: Khirawi aff.).

On August 27, 2003, nearly eleven months after Getronics offered Mr. Khirawi the position of Quality Assurance Representative, Getronics hired Mr. Khirawi into the position, to begin September 1, 2003 at an annual salary of $36,000.00, well below Getronics's own declared salary ranges for the position.  (Ex. 5: Getronics memorandum dated August 27, 2003).  As of July, 2003, Getronics' salary ranges for the position of Quality Assurance Representative were $40,900.00 at a low, and $49,900.00 at a high.  (Ex. 42: Miles depo., p. 161; Ex. 3: Getronics Position/Employee Requisition form).

## Mr. Khirawi's December 2003 complaint of discrimination and report of Ms. Miles's June, 2003 comment

In December 2003, Mr. Khirawi submitted a request for tuition reimbursement for IT classes he took, which he felt were subject to reimbursement under Getronics's policy and fringe

benefits package.  (Ex. 44: Khirawi aff.).  Getronics, through Ms. Miles and Terrence Freeman, a

Human Resources manager, denied Mr. Khirawi's request for tuition benefits. Ms. Miles directed

Mr. Khirawi to Human Resources manager Gayla George if he wanted to discuss the issue

further.  (Ex. 44: Khirawi aff.).

Mr. Khirawi, again faced with unclear reasons for negative personnel action, suspected

that his race and religion were a factor in the denial of his tuition reimbursement because of the

history he had at Getronics, including his long period of temporary employment as compared

with an equivalent Caucasian employee; his removal from the AERO project following the

events of September 11, 2001; his virtually unexplained involuntary leave of absence following

the events of September 11, 2001; the eleven month delay in his promotion after being offered

the position; and his manager's comment that the delay in his promotion was race based.  (Ex.

44: Khirawi aff.).

As a result of his suspicion that his race and religion may have been a factor in the denial

of his tuition reimbursement, on December 18, 2003 Mr. Khirawi e-mailed Gayla George, a

Human Resources manager, asking for an investigation.  Mr. Khirawi indicated in his e-mail that

the reasons for the denial of reimbursement were unclear to him and that Mr. Freeman acted with

unexplained hostility and bias. He further asked Ms. George to "kindly to look into this matter

with an investigation, as discrimination and bias based on my national origin and religion have

been a part of my history with Getronics."  Mr. Khirawi went on to include that Ms. Miles had

previously communicated that race was a factor in his history at Getronics.  (Ex. 6: 12/18/03 –

12/20/03 e-mail string, Bates stamped number GETR0937).

**Getronics and Ms. Miles equate a complaint of discrimination with insubordination**

Notably, Ms. Miles testified that the reason for Mr. Khirawi's later termination in

October, 2004, was 'blatant insubordination,' but that there were no incidents of insubordination until December, 2003. (Ex. 42: Miles depo. pp. 54, 55-56, 79). Ms. Miles testified that the first incident of Mr. Khirawi's insubordination was in relation to the events surrounding his internal complaint of discrimination regarding Getronics's denial of tuition reimbursement in December, 2003. (Ex. 42: Miles depo. pp. 96-97). Meanwhile, Getronics's MCAD Position Statement described Mr. Khirawi's internal complaint in December 2003 regarding tuition reimbursement, but does not cite to any insubordination, only the mere fact that Mr. Khirawi complained that the denial was discriminatory. (Ex. 46: Getronics MCAD Position Statement, pp. 6-7).

**Getronics's investigation into Mr. Khirawi's December, 2003 complaint – Ms. Miles is angry to be confronted with her June 2003 comment that race was a factor in Mr. Khirawi's delayed promotion**

In December 2003 and January 2004, Joan Anderson, a Tewksbury based Human Resources representative for Getronics, investigated Mr. Khirawi's complaint of discrimination. (Ex. 44: Khirawi aff.). On January 5, 2004, Ms. Anderson met with Ms. Miles and confronted Ms. Miles with Mr. Khirawi's contention that Ms. Miles had, in June, 2003, told him that the delay in his promotion was race based. (Ex. 7: Anderson notes of HR investigation, Bates stamped number GETR0981). Ms. Miles was very angry that Mr. Khirawi had reported to Human Resources that she had told him the delay in his promotion was race based. (Ex. 7: Anderson notes of HR investigation, Bates stamped number GETR0981).[1]

On January 15, 2004, Ms. Anderson sent a Memorandum to Mr. Khirawi that she had concluded her investigation and that she did not find evidence of discrimination. (Ex. 8: January 15, 2004 Memorandum.) Later that day, Mr. Khirawi sent an e-mail to Ms. Anderson indicating that he felt her written investigation conclusions did not address the more critical aspects of his

_____

[1] When asked in her deposition whether she was angry that Mr. Khirawi had reported her alleged June 2003 comment, Ms. Miles lied, saying that she was "more hurt than angry." (Ex. 42, Miles depo., pp. 74-75).

discrimination complaint, including his contention that Ms. Miles told him the delay in his promotion was race based. (Ex. 9: January 15, 2004 e-mail). On January 22, 2004, Ms. Anderson held a meeting with Mr. Khirawi, Ms. Miles, and Ms. George, during which Ms. Miles admitted that she had told Mr. Khirawi that the delay in his promotion may have been race based, but that she 'did not mean it.' (Ex. 44: Khirawi aff.).

### Ms. Miles reacts to Mr. Khirawi's intent to seek legal assistance for his right to be free from discrimination

On January 28, 2004, Ms. Anderson e-mailed Mr. Khirawi to again relay that her investigation did not reveal evidence of discrimination. (Ex. 11: January 28, 2004 e-mail string). Mr. Khirawi responded to Ms. Anderson's January 28, 2004 with an e-mail of his own to Ms. Anderson, Ms. Miles, and Ms. George, that he was not satisfied with the investigation results and that he was considering getting "professional help," an apparent reference to his right to seek legal counsel relative to the matter. (Ex. 11: January 28, 2004 e-mail string).

When Ms. Miles received Mr. Khirawi's e-mail indicating that he was considering getting "professional help," i.e., the assistance of legal counsel, she e-mailed her supervisor, James Hoffman. Ms. Miles indicated to Mr. Hoffman that in light of Mr. Khirawi's comment about seeking legal counsel with respect to his discrimination complaint, Ms. Anderson's next step "is legal," and that she did not see how she could work with Ms. Khirawi. (Ex. 12: January 28, 2004 e-mail).

### The February 23, 2004 incident – Ms. Miles sets up Mr. Khirawi for confrontation

In late February, 2004, Ms. Miles assigned Mr. Khirawi to lead a February 23, 2004 conference call meeting with Patrick McHenry and Tiffany Anderson-Jones, co-workers based in Houston, relative to a project designed to improve their quality assurance process. Ms. Miles did not tell Mr. Khirawi that Mr. McHenry (with whom Mr. Khirawi had never interacted), was

actually supposed to lead the project and the meeting. (Ex. 44: Khirawi aff.; Ex. 42, Miles depo. pp. 87-89). When Mr. Khirawi tried to take the lead in the meeting with Mr. McHenry and Ms. Anderson-Jones, as Ms. Miles instructed him, he met what he thought was unexplained resistance. The meeting turned into something of a power struggle, and ultimately Mr. McHenry told Mr. Khirawi to "shut up." They then ended the conference call. (Ex. 44: Khirawi aff.).

Mr. Khirawi then e-mailed Mr. McHenry, with copies to Ms. Anderson-Jones, Ms. Miles, Mr. Galipeau, and Dorothy Dining, another manager, asking Mr. McHenry to apologize for telling him to "shut up." (Ex. 13: February 23, 2004 e-mail string, Bates stamped number GETR0910). Ms. Miles then interviewed Mr. McHenry and Ms. Anderson-Jones to find out what happened during the conference call on February 23, 2004, but failed to interview Mr. Khirawi. (Ex. 42: Miles depo, pp. 90-92).

Despite her failure to interview Mr. Khirawi, Ms. Miles sent an e-mail to Mr. McHenry, with copies to Ms. Anderson-Jones, Mr. Galipeau, and Dorothy Dining, also adding, James Hoffman, and three Human Resources Managers, Joan Anderson, Terence Freeman, and Gayla George. (Ex. 13: February 23, 2004 e-mail string, Bates stamped number GETR0909). In her February 23, 2004 e-mail, Ms. Miles apologized for Mr. Khirawi's e-mail of the same date requesting the apology. (Ex. 13: February 23, 2004 e-mail string, Bates stamped number GETR0909). Ms. Miles testified that she did not interview Mr. Khirawi to get his side of the events of the February 23, 2004 conference call because "I know Patrick and Tiffany, and I trust what they told me." (Ex. 42: Miles depo., p. 90). Ms. Miles further testified that she copied the three Human Resources managers on her February 23, 2004 e-mail because of their involvement in Mr. Khirawi's (unrelated) December 2003 - January 2004 complaint of discrimination, despite that Mr. Khirawi himself had not raised any issue of discrimination as a result of the conference

call with Mr. McHenry and Ms. Anderson-Jones.  (Ex. 42: Miles depo., p. 92-93).

### Mr. Khirawi's positive March 1, 2004 performance review

On March 1, 2004, Ms. Miles presented Mr. Khirawi with his annual performance review.  Contrary to Ms. Miles testimony that Mr. Khirawi had been insubordinate by this time, the review again showed that Mr. Khirawi performed well.  The performance review again shows that Mr. Khirawi usually exceeded Getronics's requirements in areas such as trust and respect for others; respect for <u>all team members</u>; being open to feedback from others; demonstrating commitment to team goals; helping others to find solutions; establishing and maintaining effective working relationships; and evaluating feedback from "audience' and replying in a professional manner.  (Ex. 16: March, 2004 Getronics Performance Management Process Appraisal Form.)  Although Ms. Miles now claims that her performance review in March, 2004 only related to Mr. Khirawi's interaction with Tewksbury employees, the review itself is inconsistent with this claim.  Furthermore, Jamie Graceffa, a Human Resources manager for Getronics, contradicted Ms. Miles's testimony in this regard.  He testified that Getronics' performance reviews encompass all of an employee's interactions with all co-workers, whether they work on the same site as the employee or not.

Prior to sending him his review, Ms. Miles notified Mr. Khirawi by e-mail that she would fax it to him, the time she would fax it to him, and requested confirmation of the correct fax number.  (Ex. 15: March 1, 2004 e-mail).

### Getronics's March 1, 2004 written reprimand  - Getronics intentionally embarrasses Mr. Khirawi

Three days later, on March 4, 2004, without advanced notice of the time that she would send it and without waiting for any confirmation from Mr. Khirawi, Ms. Miles faxed Mr. Khirawi a Written Reprimand.  The reprimand, which Ms. Miles drafted with Marthe Stanek,

Getronics's general counsel, related to the events surrounding the February 23, 2004 conference

call with Mr. McHenry and Ms. Anderson-Jones.  Ms. Miles faxed the reprimand document to a

machine to which other employees had access.  (Ex. 44: Khirawi aff.; Ex. 17: March 1, 2004

Written Reprimand; Ex. 42: Miles depo., p. 98).  On March 4, 2004, Mr. Khirawi received the

Written Reprimand (dated March 1, 2004) when an unknown individual left the document on his

desk with a note saying "bad boy."  Mr. Khirawi was embarrassed.  (Ex. 44: Khirawi aff.)

On March 4, 2004, Mr. Khirawi sent an e-mail to Human Resources managers Terrence

Freeman and Gayla George reporting that Ms. Miles's tone had changed since he reported her

comment that the delay in his promotion was race based.  He further asked them to investigate

why she had sent his reprimand to a public fax machine.  (Ex. 19: March 4, 2004 e-mail).

**Ms. Miles's capricious, baseless accusation that Mr. Khirawi was working from home without authority – Ms. Miles again sets up Mr. Khirawi for confrontation**

Later in March, 2004, Ms. Miles inexplicably accused Mr. Khirawi of working from

home without authority to do so.  Notably, throughout his employment at Getronics, Mr. Khirawi

never worked from home during his regular work hours. (Ex. 44: Khirawi aff.).  Further, Mr.

Khirawi and Ms. Miles had regular Monday morning meetings on the telephone to discuss the

upcoming week's agenda, generally initiated when Ms. Miles would place a call to Mr. Khirawi

on his office phone.  They had such a meeting on Monday, March 15, 2004.  (Ex. 44: Khirawi

aff.).

On Thursday, March 18, 2004, Ms. Miles sent an e-mail to Mr. Khirawi asking him

whether he was working from home Mondays.  (Ex. 44: Khirawi aff.)  Ms. Miles' inquiry into

whether Mr. Khirawi was working from home on Mondays confused Mr. Khirawi, given that

they regularly communicated on his office phone on Mondays, and he had never had any history

of working from home.  Mr. Khirawi replied to Ms. Miles's inquiry by asking why she was

asking whether he was working at home Mondays.   (Ex. 44: Khirawi aff.).

### Mr. Khirawi's report of discriminatory treatment to Human Resources upper management and the immediate disciplinary action that followed

Mr. Khirawi suspected that Ms. Miles was setting him up by accusing him of working from home without permission.  As a result, on March 18, 2004, he e-mailed Wayne Ogg, Getronics' Vice President of Human Resources, asking him for assistance.  Mr. Khirawi further reported to Mr. Ogg that he felt that Ms. Miles was retaliating against him because of his earlier report of Ms. Miles' comment that the delay in his promotion was race based.  (Ex. 20: 3/18/04-3/19/04 e-mails).   The next morning, on March 19, 2004, Human Resources Manager Jimmy Thomas sent Mr. Khirawi an e-mail directing him to answer Ms. Miles's inquiry as to whether he was working Mondays.  Mr. Thomas added a direction "not to use the words 'retaliation,' 'discrimination,' or 'harassment'" without using discretion, care and caution. (Ex. 21: 3/19/2004 e-mail).   Mr. Thomas's March 19, 2004 e-mail left Mr. Khirawi unclear on what rights he had to report discrimination or retaliation to Getronics.  Getronics did not clarify this despite Mr. Khirawi's requests.  (Ex. 44: Khirawi aff.; Ex. 22: 3/19/04 e-mails).

On or about March 22, 2004, Ms. Miles and Marthe Stanek, Getronics general counsel, drafted a Performance Improvement Plan relative to the events surrounding Ms. Miles's inquiry into whether Mr. Khirawi was working from home and Mr. Khirawi's requests for clarification on his rights to report discrimination.  (Ex: 23: March 22, 2004 Performance Improvement Plan; Ex. 42: Miles depo, p. 106).  The March 22, 2004 Performance Improvement Plan again directed Mr. Khirawi "not to use the words 'retaliation,' 'discrimination,' or 'harassment'" without using discretion, care and caution.  (Ex: 23: March 22, 2004 Performance Improvement Plan).

### Ms. Miles's admittedly capricious, baseless refusal to pay Mr. Khirawi for hours worked – Ms. Miles again sets up Mr. Khirawi for confrontation

13

From March 29, 2004 through April 26, 2004, Mr. Khirawi was out of work on an approved disability leave. (Ex. 24: Getronics Employee Input Document). From April 26, 2004 through May 17, 2004, Mr. Khirawi worked half days, with the reminder of the day being part of an approved partial disability leave. (Ex. 25 and 26: Getronics Employee Input Documents).

On his first full day back from his disability leave, Ms. Miles e-mailed Mr. Khirawi to tell him that she was only approving payment for 74 of the 80 hours he worked, without any further explanation. (Ex. 27: May 17, 2004 to May 18, 2004 e-mails, Bates stamp GETR0229). When Mr. Khirawi asked why Ms. Miles was not approving payment for all of his work hours, she responded that her decision was based on "co-worker observation." In her 14 years as a manager at Getronics, Ms. Miles concedes that singled Mr. Khirawi out, having never previously subjected a subordinate to the same scrutiny of hours as she did with Mr. Khirawi. (Ex. 27: May 17, 2004 to May 18, 2004 e-mails, Bates stamp GETR0227-0228; Ex. 42: Miles depo., p. 110-111, 175-176).

Ms. Miles arbitrarily refused to approve payment of all of Mr. Khirawi's hours worked and determined that she would only approve 74 hours of 80 reported. She did so despite the fact that she never actually concluded that Mr. Khirawi was misrepresenting his time. (Ex. 42: Miles depo, p. 110). On May 17, 2004, as a result of Ms. Miles's arbitrary denial of payment of his full salary, Mr. Khirawi requested a transfer from Ms. Miles's supervision, to no avail. (Ex. 28: May 17, 2004 e-mails between Mr. Khirawi and James Hoffman).

**Mr. Khirawi's second report of discriminatory treatment to Human Resources upper management and the immediate disciplinary action that followed**

On May 18, 2004, as a result of Ms. Miles's arbitrary denial of payment of his full salary, Mr. Khirawi e-mailed Mr. Ogg, Getronics's Vice President of Human Resources, to again seek assistance relative to Ms. Miles's treatment of him. Mr. Khirawi indicated that he felt his

religion and ethnicity have been the issue. (Ex. 29: May 18, 2004 e-mail). Three days later, on

May 21, 2004, Getronics presented Mr. Khirawi with a Written Reprimand, drafted by Ms.

Stanek, their attorney, and Human Resources, for alleged insubordination during the events

surrounding Ms. Miles's denial of full payment for Mr. Khirawi's work hours.  (Ex. 30: May 21,

2004 Written Reprimand; Ex. 42, Miles depo., pp. 113-114).

### Getronics and Ms. Miles takes punitive measures against Mr. Khirawi – admittedly without a legitimate business purpose of Getronics

On May 21, 2004, in further apparent response to Mr. Khirawi's continued efforts to

protect his rights to be free from discrimination and retaliatory conduct, Ms. Miles e-mailed Mr.

Khirawi that he will no longer be allowed a four day work week, as the rest of her subordinate

employees were permitted to work, and as she had offered in March, 2003.  (Ex. 44: Khirawi

aff.).

On May 21, 2004, in further apparent response to Mr. Khirawi's continued efforts to

protect his rights to be free from discrimination and retaliatory conduct, Ms. Miles directed Mr.

Khirawi to turn in a laptop computer that he had previously been issued.  **Ms. Miles concedes

that this order was not made for any legitimate business purpose of Getronics** but rather was

a response to the "human resources issues" that Getronics was having with Mr. Khirawi.  Where

Ms. Miles could not comment on whose idea it was to take the laptop computer away from Mr.

Khirawi, other than to say that the attorney client privilege prohibited her from answering that

question, it was clear that the idea to deny Mr. Khirawi the laptop computer privilege was likely

borne of Marthe Stanek, Getronics's attorney.  (Ex. 42: Miles depo., p. 115-117).

### Mr. Khirawi's June, 2004 EEOC charge and Getronics's disciplinary action immediately following a failed mediation

On June 8, 2004, Mr. Khirawi filed a charge of discrimination and retaliation against

Getronics with the Equal Opportunity Employment Commission ("EEOC"). (Ex. 32: EEOC charge).

On August 4, 2004, the EEOC held a mediation session to attempt to resolve the dispute surrounding Mr. Khirawi's EEOC charge. The mediation was not successful. (Ex. 44: Khirawi aff.). The next day, on August 5, 2004, Mr. Khirawi e-mailed a simple suggestion to help improve their team's overall performance. (Ex. 53: August 5, 2004 e-mail). Ms. Miles inexplicably and capriciously replied to Mr. Khirawi's suggestion for improvement of their group's performance by telling Mr. Khirawi that his conduct was unacceptable. She further charged that he had failed to return a co-worker's calls, and directed him to refrain from responding to her. (Ex. 34: August 5, 2004 e-mail). Mr. Khirawi denied having failed to return his co-workers calls, and initiated an electronic inquiry into Getronics' phone system to determine whether he received any calls that he did not return. Ms. Miles terminated the electronic inquiry. (Ex. 35: August 6, 2004 e-mails).

## Assignment of Jamie Graceffa – the August 19, 2004 meeting

In August 2004, Getronics assigned Jamie Graceffa, a Human Resources manager, to handle Mr. Khirawi's personnel issues. (Ex. 43: Graceffa depo., p. 44; Ex. 44: Khirawi aff.). On August 17, 2004, James Hoffman e-mailed Mr. Khirawi indicating that he needed to meet with him and with Mr. Graceffa to "go over performance expectations." Mr. Hoffman did not indicate specifically the impetus for the meeting, or that there was going to be a document associated with the meeting. (Ex. 36: August 17, 2004 e-mail).

On August 19, 2004, Mr. Khirawi met with Mr. Graceffa in person and with Mr. Hoffman by telephone, to go over a plan for him to submit weekly reports of his work, to maintain daily activity logs, and to e-mail Mr. Graceffa his daily arrival and departure

information.  Despite his protestations to the contrary, Graceffa did not present Mr. Khirawi with Performance Improvement Plan documentation.  (Ex. 44: Khirawi aff.; Ex. 36: Performance Improvement Plan dated August 19, 2004; Ex. 43: Graceffa depo., p. 71).

Mr. Khirawi submitted weekly reports of his work, maintained daily activity logs, and e-mailed Mr. Graceffa his daily arrival and departure information in compliance with all verbal requests made during the meeting on August 19, 2004.  (Ex. 44: Khirawi aff.).

**Getronics again takes arbitrary disciplinary action against Mr. Khirawi after an event at the EEOC**

On September 24, 2004, Getronics's general counsel, Marthe Stanek, submitted Getronics's Position Statement to the EEOC relative to Mr. Khirawi's June, 2004 EEOC charge. (Ex. 47: Getronics's September 24, 2004 EEOC Position Statement).  <u>That afternoon</u>, on September 24, 2004, Mr. Graceffa e-mailed Mr. Khirawi a warning that he was not complying with the August 19, 2004 Performance Expectations document by allegedly failing to e-mail in his arrival and departure times.  (Ex. 37: September 24, 2004 e-mail).   Mr. Khirawi contends that he did comply with the requirement that he e-mail Mr. Graceffa his arrival and departure, but that he did so pursuant to the verbal instructions given on August 19, 2004, and never received any Performance Expectations document that day.  (Ex. 44: Khirawi aff.).

**Getronics again takes arbitrary disciplinary action against Mr. Khirawi immediately after an event at the EEOC for the third time  - and Mr. Khirawi's termination**

On October 8, 2004, the EEOC dismissed Mr. Khirawi's EEOC charge and sent notice of the decision to the parties.  (Ex. 39: October 8, 2004 EEOC notice).  Four days later, on October 12, 2004, Mr. Graceffa informed Mr. Khirawi that he wanted to meet with him to provide him with a written reprimand.   (Ex. 40: October 12, 2004 e-mails).  On October 26, 2004, Mr. Graceffa met with Mr. Khirawi, for the purpose of issuing him a Written Reprimand.  Mr.

Khirawi asked that the meeting be recorded.  After consulting with counsel for Getronics, Ms. Stanek, Mr. Graceffa denied the request to record the meeting.  (Ex. 43: Graceffa depo. p. 84-85; Ex. 41: October 26, 2004 Written Reprimand).

During the meeting by conference call on October 26, 2004, Mr. Graceffa was rude, belligerent, and was yelling at Mr. Khirawi.  Mr. Khirawi stayed calm, but did deny Mr. Graceffa's repeated assertions that he gave Mr. Khirawi the August 19, 2004 Performance Expectations document on August 19, 2004.   (Ex. 44: Khirawi aff.).

Getronics terminated Mr. Khirawi on October 26, 2004, within 15 or 20 minutes after the call with Mr. Graceffa.  (Ex. 44: Khirawi aff.).  Getronics lied about the reason for and circumstances surrounding its termination of Mr. Khirawi when, in correspondence with the Massachusetts Department of Employment and Training, it represented that Mr. Khirawi was terminated when he "became irate and started calling everyone in the room a liar…" and "…continued to talk over everyone in the room."  Getronics now acknowledges that there was no one in the room with Mr. Khirawi during his meeting with Mr. Graceffa on October 26, 2004. (Ex. 48: letter to Massachusetts Department of Employment and Training).


III.    **SUMMARY OF ARGUMENT**

The Court should deny the defendant's motion for summary judgment because the Mr. Khirawi has produced sufficient evidence to show that genuine issues of material fact exist.  Mr. Khirawi has produced sufficient evidence that 1) he engaged in protected activity; 2) Getronics subjected him to adverse employment action; 3) there was a causal connection between the protected activity and the adverse action; and 4) there is direct evidence of Getronics's retaliatory

motive behind its adverse actions; and 5) the defendant's articulated reason for its series of adverse actions and termination of Mr. Khirawi was pretext for retaliation.

## IV.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Mr. Khirawi has produced sufficient evidence from which a jury could infer Getronics's unlawful retaliation for protected activity under Title VII and M.G.L. Chapter 151B.  Summary judgment is disfavored in context of disparate treatment discrimination cases, where issues of the employer's motives must be decided.   *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127 (1997), citing *Blare v. Husky Injection Molding Systems Boston, Inc.,* 419 Mass. 437, 439 (1995); *Brunner v. Stone & Webster Eng'g Corp.,* 413 Mass. 698, 705 (1992) ("where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate"), quoting *Flesner v. Technical Communication Corp.,* 410 Mass. 805, 809 (1991).

The ultimate issue of discriminatory intent is a factual question, *Anderson v. Bessemer City, 470 U.S. 564, 572-573 (*1985) (issue of intent in federal discrimination cases is a question of fact). The ultimate question of the defendants' state of mind is elusive and rarely is established by other than circumstantial evidence, *Wheelock College v. Massachusetts  Comm'n Against Discrimination*, 371 Mass. 130, 137 (1976), which requires the jury to weigh the credibility of conflicting explanations of the adverse hiring decision;  *Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)* ("This court has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury, as proof is generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'" (citation and quotation marks omitted)

B.    **THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF
      RETALIATION**

Pursuant to Title VII:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his employees . . .
> because he has opposed any practice made an unlawful
> employment practice by this subchapter, or because he has
> made a charge, testified, assisted, or participated in any
> manner in an investigation, proceeding, or hearing under
> this subchapter.  42 U.S.C. § 2000e-3(a).

For a prima facie case of retaliation in violation of Title VII and M.G.L. Chapter 151B,

Mr. Khirawi must show that (1) he engaged in protected conduct, (2) he was thereafter subjected

to an adverse employment action, and (3) a causal connection existed between the protected

conduct and the adverse action.  *Chungchi Che v. MBTA,* 342 F. 3d 31, 38 (1st Cir. 2003);

quoting *Hernandez-Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir. 1998);

*Mole v. University of Massachusetts,* 58 Mass.App.Ct. 29, 39 (2003).

1.    Mr. Khirawi satisfies the first element of the prima facie case because he engaged
      in protected activity.

In this case, Mr. Khirawi produces ample evidence establishing a prima facie case of

retaliation.  As to the first element, Mr. Khirawi engaged in protected activity under Title VII

and M.G.L. Chapter 151B on a number of occasions.  First, in December, 2003, he lodged an

internal complaint of discrimination as to Getronics's application of its policy regarding tuition

reimbursement.  Within the context of that complaint, Mr. Khirawi reported that he felt that the

eleven month delay in his offered promotion was discriminatory because his manager, Ruby

Miles, told him the delay may have been race based.  After that complaint, on multiple

occasions, Mr. Khirawi reported to Terrence Freeman, Gayla George and Wayne Ogg,

Getronics' human resources executives, that Ms. Miles and Getronics were discriminating and retaliating against him for reporting Ms. Miles's comment that the promotion delay was race based.  Mr. Khirawi satisfies the first element of the prima facie case of retaliation because he engaged in protected activity on numerous occasions.  *See Chungchi Che,* 342 F. 3d at 38.

> 2.  Mr. Khirawi satisfies the second element of the prima facie case because Getronics subjected him to adverse action.

Mr. Khirawi also satisfies the second element of the prima facie case of retaliation because Getronics subjected him to numerous adverse employment actions, including his ultimate termination on October 26, 2004.  *See id.; Mole,* 58 Mass.App.Ct. at 39.   According to Getronics's performance evaluations of Mr. Khirawi, Mr. Khirawi performed well during the first four and one-half years of his employment.   In fact, Getronics repeatedly noted that he exceeded their requirements as to trust and respect for other employees, for establishing effective working relationships, and for being a "team player."

Mr. Khirawi was not subjected to any disciplinary action for insubordination until after his December 2003 complaint of discrimination and report of Ms. Miles's comment that his promotion was delayed due to racial factors.   After that complaint, Getronics subjected Mr. Khirawi to an pattern of multiple instances of adverse action.  Ms. Miles set up Mr. Khirawi for confrontation with Patrick McHenry on February 23, 2004, then refused to interview Mr. Khirawi for his version of the facts of the confrontation.  Getronics issued written reprimands to Mr. Khirawi on March 1, 2004, May 21, 2004, and October 26, 2004.   Getronics singled out Mr. Khirawi for increased scrutiny of his work hours.  Getronics placed Mr. Khirawi on Performance Improvement Plans on March 22, 2004 and August 19, 2004, for further unwarranted scrutiny.  Getronics took away Mr. Khirawi's agreed benefit of a four day work week.   Getronics

arbitrarily, and admittedly without legitimate business purpose, ordered Mr. Khirawi to turn in the company laptop computer. Getronics arbitrarily refused to approve payment for all of Mr. Khirawi's hours, despite that Ms. Miles admits that her investigation into his work hours was inconclusive. Getronics wrongfully accused Mr. Khirawi of failing to abide by his Performance Improvement Plans. Finally, Getronics terminated Mr. Khirawi on October 26, 2004. Mr. Khirawi satisfies the second element of the prima facie case of retaliation because Getronics subjected him to adverse employment action. *See Chungchi Che,* 342 F. 3d at 38; *Mole,* 58 Mass.App.Ct. at 39.

       3.      <u>Mr. Khirawi satisfies the third element of the prima facie case because Getronics's adverse action was causally related to Mr. Khirawi's protected activity.</u>

          a.     <u>Temporal proximity</u>

The plaintiff also satisfies the third element of the prima facie case of retaliation because he has produced ample evidence that there was a causal connection between his protected activity and Getronics's adverse action. *See Chungchi Che,* 342 F. 3d at 38; *Mole,* 58 Mass.App.Ct. at 39. When examining such evidence, the Court should note that the prima facie case is "a small showing that is not onerous and is easily made." *Chungchi Che,* 342 F. 3d at 38, quoting *Kosereis v. State of Rhode Island,* 331 F.3d 207, 213 (1st Cir. 2003).

There are numerous ways for a plaintiff such as Mr. Khirawi to satisfy the causal connection element of the prima facie case. Temporal proximity between the protected activity and the adverse action is one method. *Chungchi Che,* 342 F. 3d at 38; *See Wyatt v. City of Boston,* 35 F.3d 13, 16 (1st Cir. 1994) (per curiam) (stating that "one way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the

employer's adverse action."); *Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991)* (stating that "there are many sources of circumstantial evidence that . . . can demonstrate retaliation").

In the *Chungchi Che* case, the First Circuit held that eleven months between the employee's protected activity and the employer's adverse action was sufficient for a jury to infer the causal connection and retaliation. *Chungchi Che,* 342 F. 3d at 38-39. In this case, Mr. Khirawi's December, 2003 internal complaint of discrimination resulted in a human resources investigation. During that investigation, on January 5, 2004 and again on January 22, 2004, Joan Anderson, the investigating human resources representative, confronted Ms. Miles with Mr. Khirawi's contention that Ms. Miles had told him that his promotion delay was due to racial factors. Ms. Miles was very angry as a result. Ms. Miles's tone and interaction with Mr. Khirawi changed for the worse immediately thereafter. Ms. Miles embarked on a campaign of arbitrary action against Mr. Khirawi designed to set him up for failure.

Less than one month after human resources confronted her with her June 2003 comment that race was a factor in Mr. Khirawi's delayed promotion, Ms. Miles set Mr. Khirawi up for confrontation when she untruthfully told him that he was to take the lead in the February 23, 2004 conference call with Mr. McHenry and Ms. Anderson-Jones. Ms. Miles then proceeded to accept Mr. McHenry's side of the events of that confrontation without even asking for Mr. Khirawi's version. That conduct culminated in the written reprimand of March 1, 2004.

This case is much different than the *Mole v. University of Massachusetts,* 58 Mass.App.Ct. 29, 39 (2003) case, on which the defendant relies. In *Mole,* the plaintiff employee complained of acts that were many years removed from the employer's discovery of the plaintiff's protected activity. *Contra Mole,* 58 Mass.App.Ct. at 28. In this case, the record in

this case is full of instances where Mr. Khirawi engages in protected activity, including activity designed to notify Getronics that Ms. Miles was retaliating against him for reporting her June 2003 comment that his delayed promotion was race based.  In many of those instances, Getronics took adverse action almost immediately after the protected activity.  For example, nine days after the February 23, 2004 incident, Getronics issued Mr. Khirawi a written reprimand.  Ms. Miles embarrassed Mr. Khirawi by faxing the reprimand document to a fax machine to which other employees had access.  Mr. Khirawi then engaged in further protected activity when he reported to human resources that Ms. Miles was retaliating against him.  Twelve days later, Ms. Miles accused Mr. Khirawi of working from home on Mondays without authority.  Ms. Miles's accusation was capricious.  She was well aware that Mr. Khirawi was not working from home. She had had regular Monday meetings with Mr. Khirawi when she spoke with him on his office telephone, including three days prior to her accusation.

On March 18, 2004, Mr. Khirawi e-mailed Mr. Ogg, Getronics Human Resources Vice President, that Ms. Miles was retaliating against him for reporting her June 2003 comment that his delayed promotion was race based.  *The next morning*, human resources issued a disciplinary warning to Mr. Khirawi via Mr. Thomas March 19, 2004 e-mail.  Four days later, Getronics placed Mr. Khirawi on a Performance Improvement Plan.

On May 17, 2004, Getronics informed Mr. Khirawi that they would not pay him for all hours worked, with no sufficient explanation.  On May 18, 2004, Mr. Khirawi again e-mailed Mr. Ogg to report that race is a factor in his manager's decisions.  *Three days later*, Getronics issued a written reprimand.  *On the same day*, Ms. Miles singled out Mr. Khirawi when she took away Mr. Khirawi's benefit of a four day work week, as all other subordinates on her team had. *That same day*, Ms. Miles ordered Mr. Khirawi to turn in a laptop computer.  Ms. Miles

admitted that this order was a reaction to the "human resources" issues Getronics had with Mr. Khirawi, and not related to any legitimate business need.

On August 4, 2004, the day of Mr. Khirawi's and Getronics's mediation of Mr. Khirawi's June 8, 2004 EEOC charge.  In attending the mediation, Mr. Khirawi sought to enforce his rights to be free of discrimination and retaliation. The mediation failed.  *The next day*, Ms. Miles reacted inexplicably angry at Mr. Khirawi's simple suggestion for improvement, and wrongly claimed that Mr. Khirawi was not returning co-workers calls.

On October 8, 2004, the EEOC issued its lack of probable cause finding on Mr. Khirawi's June, 2004 charge.  *Four days later*, Getronics issued Mr. Khirawi a notice for a meeting with human resources to issue him a written reprimand.  The meeting occurred on October 26, 2004, after which Mr. Khirawi was terminated.

Mr. Khirawi has produced ample evidence that Getronics's adverse actions were causally related to his protected activity because, unlike in the *Mole* case, the adverse actions were repeatedly close in time to Mr. Khirawi's protected activity.  *Chungchi Che,* 342 F. 3d at 38; *See Wyatt v. City of Boston,* 35 F.3d 13, 16 (1st Cir. 1994) (per curiam) (stating that "one way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action."); *Ruffini v. State Street Bank & Trust Co.,* 908 F.Supp. 1019, 1046 (D. Mass. 1995),; *Contra Mole,* 58 Mass.App.Ct. at 28.  As the *Mole* Court held,  Getronics' adverse actions repeatedly came in the immediate aftermath of Mr. Khirawi's protected activity.  Consequently, an inference of causation is permissible. *Id.* at 22.

     b.     <u>Getronics disparate treatment of Mr. Khirawi shows a causal connection</u>

There are many sources of circumstantial evidence that . . . can demonstrate retaliation. *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 828 (1st Cir. 1991). Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection. *Chungchi Che,* 342 F. 3d at 38; *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir 1997) (stating that "where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference" that a causal connection exists).   In this case, Getronics subjected Mr. Khirawi to numerous acts of disparate treatment and a pattern of antagonism in the time period between his protected activities between December, 2003, and Getronics's ultimate termination of his employment in October, 2004.

After Mr. Khirawi caused Ms. Miles to be confronted with her June, 2003 comment that race was a factor in the delay of his promotion, Ms. Miles engaged in a pattern of antagonizing Mr. Khirawi.  She further singled out Mr. Khirawi for scrutiny that she admits was different than any other employee in her fourteen year history as a manager at Getronics.  Ms. Miles accused Mr. Khirawi of unauthorized work from home under very suspicious circumstances; Ms. Miles refused to approve Mr. Khirawi's pay even though she had not come to any conclusions on whether he misrepresented the hours he worked; Ms. Miles took away privileges from Mr. Khirawi for admittedly no legitimate business purpose of Getronics; Getronics falsely accused Mr. Khirawi of not complying with his Performance Improvement Plan; Getronics falsely contends that Mr. Khirawi received an August 19, 2004 document which he never received; finally, Getronics terminated Mr. Khirawi for insubordination immediately after a meeting during which Mr. Khirawi was not at all insubordinate.

Mr. Khirawi satisfies the causal connection element of the prima facie case of retaliation because he has produced ample evidence that Getronics subjected him to disparate treatment and a pattern of antagonism during the period between the protected activity and the adverse employment action. *Chungchi Che,* 342 F. 3d at 38; *Kachmar,* 109 F.3d at 177.

        c.        <u>Direct evidence of Getronics's retaliatory motive shows a causal connection</u>

There are many sources of evidence that can demonstrate retaliation, including evidence of a retaliatory mindset. *See Mesnick,* 950 F.2d at 828. In this case, the defendant claims that the reason for Mr. Khirawi's termination was insubordination. Ms. Miles testified that the first instance of insubordination was in December, 2003, when Mr. Khirawi lodged his internal complaint of discrimination. Getronics does not claim that Mr. Khirawi did or said anything unprofessional, rude or insubordinate in the course of his complaint – only that he complained. Therefore, Ms. Miles and Getronics equate Mr. Khirawi's discrimination complaint with insubordination. Their adverse actions against Mr. Khirawi for his "insubordination" in December, 2003, i.e. his complaint of discrimination, constitute direct evidence of Getronics's retaliatory motive.

Ms. Miles further testified that she took away Mr. Khirawi's laptop computer privilege as a direct response to the "HR issues" they had with Mr. Khirawi. Ms. Miles admitted that Getronics had no legitimate business need for the return of the laptop. Her order to return it was a form of punishment for Mr. Khirawi's utilization of his right to lodge a complaint of discrimination with Getronics's Human Resources department. Again, Mr. Khirawi shows direct evidence of a retaliatory motive on Getronics's part.

Getronics attempted to chill Mr. Khirawi's rights to engage in protected activity. Beginning with Getronics's March 19, 2004 e-mail from Human Resources manager Jimmy

Thomas, Getronics repeatedly ordered Mr. Khirawi to refrain from using the words "discrimination," "retaliation" or "harassment" without discretion.  Mr. Khirawi asked for clarification on what this meant if he felt that he was a victim of discrimination. Getronics offered him no explanation.   Again, Getronics equated even the mention of the words "discrimination" or "retaliation" with insubordination.  Getronics attempt to chill Mr. Khirawi's rights under Title VII and M.G.L. Chapter 151B is direct evidence of retaliatory motive for its actions.  The Court should find that Mr. Khirawi has satisfied his burden to show evidence of a causal connection between his protected activity and Getronics's adverse action.  Such direct evidence of retaliation satisfies the causal connection requirement.  *See Chungchi Che,* 342 F. 3d at 38, quoting *Mesnick,* 950 F.2d at 828.

### B.     THE PLAINTIFF HAS ESTABLISHED THAT GETRONICS'S ARTICULATED REASON FOR HIS TERMINATION IS A PRETEXT FOR RETALIATION

Once the plaintiff presents a prima facie case, an inference of retaliation arises.   *See Hazel v. United States Postmaster Gen.*, 7 F.3d 1, 3 (1st Cir. 1993). The employer is then required to offer a non- retaliatory reason for the employment action in question. *See Bishop v. Bell Atl. Corp.*, 299 F.3d 53, 58 (1st Cir. 2002). In this case, Getronics contends that Mr. Khirawi's insubordinate conduct was the reason for his termination.

When the employer offers a non-retaliatory reason, the inference of retaliation fades away. All that remains is for the plaintiff to show that the adverse employment action was the result of discriminatory animus. *See Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 6 (1st Cir. 2000).  Evidence that the employer's stated reasons are pretextual can be sufficient for a jury to infer retaliatory animus. *See Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir. 2002); *Fennel v. Fist Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir. 1996).   When

plaintiff can show that at least one of the defendant's articulated reasons is false, a jury can infer

discrimination. *Lipshitz v. Raytheon Company*, 434 Mass. 493, 501 (2001).

There is no "mechanical formula" for finding pretext. *Feliciano de la Cruz,* 218 F.3d at

6.  It is the type of inquiry where "everything depends on the individual facts." *Thomas v.*

*Eastman Kodak Co.,* 183 F.3d 38, 57 (1st Cir.  1999). As such, Courts have been "particularly

cautious" about taking such questions out of the jury's hands. *Hodgens v. Gen. Dynamics Corp.,*

144 F.3d 151, 167 (1st Cir. 1998).; see also *Petitti v. New England Tel. & Tel. Co*., 909 F.2d 28,

34 (1st Cir. 1990) ("This court has consistently held that determinations of motive and intent,

particularly in discrimination cases, are questions better suited for the jury, as proof is generally

based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'")

The plaintiff may prove pretext in several different ways. See *Santiago-Ramos v.*

*Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir. 2000). One way is by presenting

evidence of disparate treatment. *See Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 43-44 (1st

Cir. 2001); *Mesnick,* 950 F.2d at 824; *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass.

122, 129 (1997).  In this case, Ms. Miles admitted that she singled out Mr. Khirawi for higher

scrutiny than any other employee she had managed in her 14 years with Getronics.  Other than

with Mr. Khirawi, Ms. Miles did not have any other occasion to subject an employee to an

intense level of monitoring of attendance.  This despite that before his December 2003 complaint

of discrimination, Mr. Khirawi had never been the subject of any disciplinary action.  Getronics

had never questioned Mr. Khirawi's work ethic or hours of attendance.

Ms. Miles disparate treatment of Mr. Khirawi after his report of her June, 2003 comment

that his delayed promotion was race related was important in many respects.  Ms. Miles accused

Mr. Khirawi of working from home on Mondays.  That accusation was particularly suspect

because the two had regular Monday telephone meetings in which Ms. Miles would call Mr.
Khirawi on his office phone – including the Monday prior to her accusation. That accusation
resulted in unnecessary confrontation with Mr. Khirawi, who did not have a history being
confrontational at work. The confrontation resulted in disciplinary action in the form of
Performance Improvement Plan on March 22, 2004. The Performance Improvement Plans to
which Getronics subjected Mr. Khirawi formed the basis for future claims by Getronics that Mr.
Khirawi did not comply with the plans.

Further, Ms. Miles arbitrarily and admittedly without evidence, chose to refuse to pay
Mr. Khirawi. Again, that refusal resulted in unnecessary confrontation with him. The
confrontation resulted in disciplinary action. Getronics's resulting disciplinary actions ultimately
led to the confrontation that preceded Mr. Khirawi's termination. Consequently, the Court
should hold that Mr. Khirawi has presented sufficient evidence of pretext because he has
presented evidence of disparate treatment that ultimately led to Mr. Khirawi's termination in
October, 2004. *See Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 43-44 (1st Cir. 2001);
*Mesnick,* 950 F.2d at 824; *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129
(1997)

Another way of demonstrating pretext is "by showing that the employer's proffered
explanation is unworthy of credence." *Chungchi Che,* 342 F. 3d at 39; quoting *Reeves v.
Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000);
*City of Salem v. Massachusetts Commission Against Discrimination,* 44 Mass.App.Ct. 627, 643
(1998) (contradictions in the employer's proffered reason for its actions are relevant evidence of
pretext). Furthermore, evidence of the employer's use of uncontrolled subjectivity is also
relevant evidence of pretext. *City of Salem,* 44 Mass.App.Ct. at 643.

In this case, Mr. Khirawi has shown that Ms. Miles and Getronics's pattern of adverse actions were the product of uncontrolled subjectivity. For example, Ms. Miles testified that she chose to believe Mr. McHenry regarding the events of the confrontation with Mr. Khirawi on February 23, 2004 without interviewing Mr. Khirawi simply because she "knew" Mr. McHenry. This confrontation ultimately resulted in a written reprimand for Mr. Khirawi.

Additionally, Ms. Miles's testified that Getronics had no legitimate business reason to take away Mr. Khirawi's privilege of a laptop computer. She said that this decision was Getronics's reaction to the "HR issues" they had with Mr. Khirawi, i.e., his reports of discriminatory and retaliatory behavior -protected activity under Title VII and Chapter 151B

The Court should hold that Mr. Khirawi has produced sufficient evidence of pretext to allow a reasonable inference that the reasons Getronics's provides for its multiple adverse actions culminating in Mr. Khirawi's termination are inconsistent, and were not the true reasons. *See Chungchi Che,* 342 F. 3d at 39.

### C.    NO ASPECT OF MR. KHIRAWI'S CLAIM IS TIME BARRED

Although it cites no case law to support its position, the defendant argues that under the applicable statute of limitations, Mr. Khirawi is unable to challenge any of Getronics' conduct prior to June 11, 2004, 300 days prior to his April 11, 2005 filing of an MCAD charge of retaliation. The defendant is mistaken in three important respects.

First, Mr. Khirawi's April 11, 2005 MCAD charge of retaliation was the second such filing. Mr. Khirawi also filed a charge of discrimination and retaliation with the EEOC on June 8, 2004. Therefore, none of Getronics retaliatory acts, which began soon after Mr. Khirawi's December 23, 2003 complaint of discrimination, are time barred.

Second, the defendant's argument in this regard is fundamentally misplaced. The plaintiff's claim is that Ms. Miles began a series of antagonistic and disciplinary acts in retaliation for being confronted with her comment that Mr. Khirawi's promotion was delayed due to race. Further, Mr. Khirawi contends that Getronics engaged in a pattern of artificial creation of a negative personnel record on which a future termination might be based, again in retaliation for Mr. Khirawi's continued protected activity. That series of retaliatory acts culminated in Mr. Khirawi's termination in October 26, 2004. The termination is the act that resulted in the vast majority of Mr. Khirawi's damages. The termination, and many other acts within the series of retaliatory acts, are well within the filing period.

A plaintiff who has a seasonable claim may use events that occurred prior to the limitation period as relevant background evidence to establish his claim, even though he might not recover damages for the "time-barred" events. *Cuddyer v. The Stop & Shop Supermarket Co.,* 434 Mass. 521, 530, n. 10 (2001), *citing Sabree v. United Bhd of Carpenters & Joiners, Local No. 33,* 921 F.2d 396, 400, n. 9 (1st Cir. 1990). The 300 day limitations period in circumstances like this case is not an evidentiary exclusionary rule. Getronics retaliatory acts prior to the limitations period are relevant evidence to the ultimate question of whether Mr. Khirawi's termination was motivated by retaliation (and whether he may recover damages for such a retaliatory termination).[2]

D.    **CONCLUSION**

The Court should deny the defendant's motion for summary judgment because the Mr. Khirawi has produced sufficient evidence to show that genuine issues of material fact exist. Mr.

---

[2] Furthermore, the plaintiff contends that the continuing violations doctrine allow Mr. Khirawi to seek damages from all acts of retaliation in a sufficiently related series of such acts. *See Cuddyer,* 434 Mass. at 538-539; *Keeler v. Putnam Fiduciary Trust Co.,* 238 F. 3d 5, 11-12 (1st Cir. 2001).

Khirawi has produced sufficient evidence that 1) he engaged in protected activity; 2) Getronics subjected him to adverse employment action; 3) there was a causal connection between the protected activity and the adverse action; and 4) there is direct evidence of Getronics's retaliatory motive behind its adverse actions; and 5) the defendant's articulated reason for its series of adverse actions and termination of Mr. Khirawi was pretext for retaliation.

WHEREFORE, the plaintiff respectfully seeks that the Court DENY the defendant's motion for summary judgment.

Respectfully submitted,
For the plaintiff,

/s/      Sol J. Cohen
Sol J. Cohen
BBO # 630776
COHEN & SALES
43 Thorndike Street
Cambridge, MA 02141
(617) 621-1151

**CERTIFICATE OF SERVICE**

I, Sol J. Cohen, attorney for the plaintiff, Aalaeldin Khirawi hereby certify that on this 5th day of April, 2007, I filed this document through the Court's ECF system, and will be sent electronically to the registered participants who are counsel of record on this matter.

/s/      Sol J. Cohen_____
Sol J. Cohen