UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11877-WGY

_____
)
AALAELDIN KHIRAWI                )
)
　　　Plaintiff                  )
)
v.                               )
)
GETRONICS WANG CO., LLC          )
D/B/A GETRONICS                  )
)
　　　Defendants                 )
_____)

## PLAINTIFF, AALAELDIN KHIRAWI'S RULE 56.1 STATEMENT OF MATERIAL FACTS IN DISPUTE

　　　The Plaintiff, Aalaeldin Khirawi, submits the following Statement of Material Facts of record to which there exists a genuine issue to be tried, pursuant to Rule 56.1 of the Local Rules for the District of Massachusetts.  The pleadings of record, the deposition testimony of parties and witnesses, affidavits, and the documentary exhibits, all of which are attached to the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment filed herewith, establish the following facts to be tried.

　　　1.　　The Plaintiff Aalaeldin Khirawi (hereinafter "Mr. Khirawi") is a United States citizen originally from the Sudan, and is an African Muslim.  (Ex. 44: Khirawi aff.).

　　　2.　　Mr. Khirawi began employment with the defendant, Getronics Wang Company, LLC (hereinafter "Getronics"), in approximately May, 1999, as a temporary employee.  (Ex. 44: Khirawi aff.).

　　　3.　　Getronics hired a Caucasian temporary employee named Gerald Tracy as a

permanent employee despite that Mr. Tracy began his temporary employment four months after Mr. Khirawi. (Ex. 44: Khirawi aff.).

4. After more than one year of temporary employment, in August, 2000, Mr. Khirawi enlisted aid from a Washington based lobbying group, Council on American-Islamic Relations, to communicate to Getronics his suspicion that Getronics's failure to hire Mr. Khirawi as a permanent employee was race and religion based. (Ex. 44: Khirawi aff.).

5. On August 29, 2000, Getronics hired Mr. Khirawi as a permanent employee. (Ex. 46: Getronics's Massachusetts Commission Against Discrimination ("MCAD") Position Statement, p. 4).

6. During his first year of permanent employment, Mr. Khirawi performed well; his Getronics's August 2001 performance review shows that Mr. Khirawi usually exceeded Getronics's requirements in areas such as trust and respect for others; being open to feedback from others; demonstrating commitment to team goals; helping others to find solutions; establishing and maintaining effective working relationships; and evaluating feedback from "audience' and replying in a professional manner. (Ex. 1: August 2001 Getronics Performance Management Process Appraisal Form.)

7. Mr. Khirawi did not receive any warnings or other personnel actions for insubordination or failing to communicate with his superiors or co-workers in an unprofessional manner at anytime between his May 1999 hire as a temporary employee and early 2004, over four and one-half years later. (Ex. 44: Khirawi aff.).

8. In May, 2001, Getronics chose Mr. Khirawi and others for an off site project called the "AERO" project. Mr. Khirawi began to train for this project then. (Ex. 44: Khirawi aff.).

9. Within weeks of the terrorist attack of September 11, 2001, Getronics removed Mr. Khirawi from the AERO project, under highly disputed circumstances. (Ex. 44: Khirawi aff.).

10. Without explanation from Getronics, Mr. Khirawi remained without a place to work for a period of approximately seven weeks in the fall of 2001, in essence, a paid leave of absence. (Ex. 44: Khirawi aff.).

11. Mr. Khirawi suspected that Getronics's decisions to remove him from the AERO project and to maintain him on leave of absence soon after the events of September 11, 2001, were based on his Muslim religion and ethnicity. (Ex. 44: Khirawi aff.).

12. In mid 2002, Paul Galipeau, Mr. Khirawi's manager, recommended Mr. Khirawi for a promotion to a Quality Assurance Representative position. (Ex. 44: Khirawi aff.).

13. In October 2002, Ruby Miles, a Houston based Quality Manager for Getronics, met with Mr. Khirawi at Getronics's Tewksbury, Massachusetts office, for the purpose of interviewing Mr. Khirawi for a position of Quality Assurance Representative. (Ex. 44: Khirawi aff.; Ex. 42: Miles depo., p. 27).

14. Ms. Miles offered Mr. Khirawi the position of Quality Assurance Representative during her meeting with him in October, 2002, at an annual salary of $40,000.00; Mr. Khirawi accepted the position. (Ex. 44: Khirawi aff.; Ex. 42: Miles depo., p. 27).

15. At the time that Ms. Miles offered Mr. Khirawi the position of Quality Assurance Representative, Ms. Miles understood that she had the authority to do so, based on a conversation with her manager. (Miles depo., p. 45).

16. At the time that Ms. Miles offered Mr. Khirawi the position of Quality Assurance Representative, Ms. Miles expected that Mr. Khirawi would begin his new position and salary

within a few weeks.  (Miles depo., p. 42-43).

      17.    After several weeks went by after Ms. Miles's job offer to Mr. Khirawi, Mr. Khirawi began to inquire as to the reason for the delay.  (Ex. 2: e-mails between Mr. Khirawi and Ms. Miles regarding the status of Mr. Khirawi's promotion, spanning January 14, 2003 through April 1, 2003).

      18.    In February, 2003, Getronics, via Mr. Galipeau, Mr. Khirawi's manager in Tewksbury, asked Mr. Khirawi to begin performing the duties of the Quality Assurance Representative position.  (Ex. 44: Khirawi aff.).

      19.    Mr. Khirawi agreed to perform the duties of the Quality Assurance Representative position despite that his salary would remain at $27,000.00, in order to assist Getronics and to help further his career with Getronics.  He performed those duties without the appropriate salary from February, 2003 until September, 2003.  (Ex. 44: Khirawi aff.; Ex. 42: Miles depo., p. 29-30).

      20.    Ms. Miles, a fourteen year manager at Getronics, is not aware of any other examples of Getronics employees who performed duties of a position without receiving the position's title and salary.  (Ex. 42: Miles depo., p. 30).

      21.    On March 7, 2003, Ms. Miles offered Mr. Khirawi the option of a four day work week, as all other subordinate employees in her group had.  (Ex. 2: e-mail of March 7, 2003, Bates stamped number GETR0620).

      22.    On March 19, 2003, in the context of e-mails between Mr. Khirawi and Ms. Miles about the status of Mr. Khirawi's delayed promotion, Ms. Miles, an African American woman, told Mr. Khirawi that she could identify and feel Mr. Khirawi's pain, having been born and raised in the 1950's, 60's and 70's;  Mr. Khirawi understood this to mean that the delay in his

promotion may have been somehow linked to his race and religion.  (Ex. 2: e-mail of March 19, 2003, Bates stamped number GETR0617; Ex. 44: Khirawi aff).

23. In June, 2003, Mr. Khirawi discussed the ongoing delay in his promotion (seven months since the offer as of that time) with Ms. Miles during a Tewksbury training session that they both attended; Ms. Miles told Mr. Khirawi that she thought that the delay in his promotion and salary raise was due to racial factors, saying something like "it is all racial Aalaeldin, it is because you are black, welcome to the club."  (Ex. 44: Khirawi aff.).

24. At the time of Ms. Miles's comment in June, 2003, Mr. Khirawi was unsure whether Ms. Miles was simply commiserating with him in an effort to make him feel better, or whether Ms. Miles had actual knowledge of race based action on the part of Getronics upper management; therefore, he did not immediately report the comment to any superiors or Human Resources.  (Ex. 44: Khirawi aff.).

25. As of July, 2003, Getronics' salary ranges for the position of Quality Assurance Representative were $40,900.00 at a low, and $49,900.00 at a high.  (Ex. 42: Miles depo., p. 161; Ex. 3: Getronics Position/Employee Requisition form).

26. Getronics's July, 2003 performance review again shows that Mr. Khirawi usually exceeded Getronics's requirements in areas such as trust and respect for others; being open to feedback from others; demonstrating commitment to team goals; helping others to find solutions; establishing and maintaining effective working relationships; and evaluating feedback from "audience' and replying in a professional manner.  (Ex. 4: July 2003 Getronics Performance Management Process Appraisal Form.)

27. On August 27, 2003, nearly eleven months after Getronics offered Mr. Khirawi the position of Quality Assurance Representative, Getronics hired Mr. Khirawi into the position,

5

to begin September 1, 2003 at an annual salary of $36,000.00, well below Getronics's own declared salary ranges for the position. (Ex. 5: Getronics memorandum dated August 27, 2003).

28. In December 2003, Mr. Khirawi submitted a request for tuition reimbursement for IT classes he took, which he felt were subject to reimbursement under Getronics's policy and fringe benefits package. (Ex. 44: Khirawi aff.).

29. Getronics, via Ms. Miles and Terrence Freeman, a Human Resources manager, denied Mr. Khirawi's request for tuition benefits. Ms. Miles directed Mr. Khirawi to Human Resources manager Gayla George if he wanted to discuss the issue further. (Ex. 44: Khirawi aff.).

30. Mr. Khirawi, again faced with unclear reasons for negative personnel action, suspected that his race and religion were a factor in the denial of his tuition reimbursement because of the history he had at Getronics, including the long period of temporary employment as compared with an equivalent Caucasian employee; the removal of him from the AERO project following the events of September 11, 2001; the virtually unexplained forced leave of absence following the events of September 11, 2001; the eleven month delay in his promotion after being offered the position; and his manager's comment that the delay in his promotion was race based. (Ex. 44: Khirawi aff.).

31. As a result of his suspicion that his race and religion may have been a factor in the denial of his tuition reimbursement, on December 18, 2003 Mr. Khirawi e-mailed Gayla George, a Human Resources manager, asking for an investigation. Mr. Khirawi indicated in his e-mail that the reasons for the denial of reimbursement were unclear to him, that Mr. Freeman acted with unexplained hostility and bias, and asked Ms. George "kindly to look into this matter with an investigation, as discrimination and bias based on my national origin and religion have been a

6

part of my history with Getronics." Mr. Khirawi went on to include that Ms. Miles had previously communicated that race was a factor in his history at Getronics. (Ex. 6: 12/18/03 – 12/20/03 e-mail string, Bates stamped number GETR0937).

32. Ms. Miles testified that the reason for Mr. Khirawi's later termination in October, 2004, was 'blatant insubordination,' but that there were no incidents of insubordination until December, 2003. (Ex. 42: Miles depo. pp. 54, 55-56, 79).

33. Ms. Miles testified that the first incident of Mr. Khirawi's insubordination was in relation to the events surrounding his internal complaint of discrimination regarding Getronics's denial of tuition reimbursement in December, 2003. (Ex. 42: Miles depo. pp. 96-97).

34. Getronics's MCAD Position Statement described Mr. Khirawi's internal complaint in December 2003 regarding tuition reimbursement, but does not cite to any insubordination, only the mere fact that Mr. Khirawi complained that the denial was discriminatory. (Ex. 46: Getronics MCAD Position Statement, pp. 6-7).

35. In December 2003 and January 2004, Joan Anderson, a Tewksbury based Human Resources representative for Getronics, investigated Mr. Khirawi's complaint of discrimination. (Ex. 44: Khirawi aff.).

36. On January 5, 2004, Ms. Anderson met with Ms. Miles and confronted Ms. Miles with Mr. Khirawi's contention that Ms. Miles had, in June, 2003, told him that the delay in his promotion was race based. (Ex. 7: Anderson notes of HR investigation, Bates stamped number GETR0981).

37. Ms. Miles was very angry that Mr. Khirawi had reported to Human Resources that Ms. Miles told him that the delay in his promotion was race based. (Ex. 7: Anderson notes

7

of HR investigation, Bates stamped number GETR0981).[1]

38.     On January 15, 2004, Ms. Anderson sent a Memorandum to Mr. Khirawi that she had concluded her investigation and that she did not find evidence of discrimination. (Ex. 8: January 15, 2004 Memorandum.)

39.     On January 15, 2004, Mr. Khirawi sent an e-mail to Ms. Anderson indicating that he felt her investigation results did not address the more critical aspects of his discrimination complaint, including his contention that Ms. Miles told him that the delay in his promotion was race based. (Ex. 9: January 15, 2004 e-mail).

40.     On January 22, 2004, Ms. Anderson held a meeting with Mr. Khirawi, Ms. Miles, and Ms. George, during which Ms. Miles admitted that she had told Mr. Khirawi that the delay in his promotion may have been race based, but that she 'did not mean it.' (Ex. 44: Khirawi aff.).

41.     On January 28, 2004, Ms. Anderson e-mailed Mr. Khirawi to again relay that her investigation did not reveal evidence of discrimination. (Ex. 11: January 28, 2004 e-mail string).

42.     Mr. Khirawi responded to Ms. Anderson's January 28, 2004 with an e-mail of his own to Ms. Anderson, Ms. Miles, and Ms. George, that he was not satisfied with the investigation results and that he was considering getting "professional help". (Ex. 11: January 28, 2004 e-mail string).

43.     When Ms. Miles received Mr. Khirawi's e-mail indicating that he was considering getting "professional help," she e-mailed her supervisor, James Hoffman, that in light of Mr. Khirawi's comment, that Ms. Anderson's next step "is legal," and that she did not see how she could work with Ms. Khirawi. (Ex. 12: January 28, 2004 e-mail).

---

[1] When asked in her deposition whether she was angry that Mr. Khirawi had reported her alleged June 2003 comment, Ms. Miles lied, saying that she was "more hurt than angry." (Ex. 42, Miles depo., pp. 74-75).

8

44. In late February, 2004, Ms. Miles assigned Mr. Khirawi to lead a February 23, 2004 conference call meeting with Patrick McHenry and Tiffany Anderson-Jones, co-workers based in Houston, relative to a project designed to improve their quality assurance process. Ms. Miles did not tell Mr. Khirawi that Mr. McHenry (with whom Mr. Khirawi had never interacted), was actually supposed to lead the project and the meeting. (Ex. 44: Khirawi aff.; Ex. 42, Miles depo. pp. 87-89).

45. When Mr. Khirawi tried to take the lead in the meeting with Mr. McHenry and Ms. Anderson-Jones, he met what was to him unexplained resistance. The meeting turned into something of a power struggle, and ultimately Mr. McHenry told Mr. Khirawi to "shut up." They then ended the conference call. (Ex. 44: Khirawi aff.).

46. Mr. Khirawi then e-mailed Mr. McHenry, with copies to Ms. Anderson-Jones, Ms. Miles, Mr. Galipeau, and Dorothy Dining, another manager, asking Mr. McHenry to apologize for telling him to "shut up." (Ex. 13: February 23, 2004 e-mail string, Bates stamped number GETR0910).

47. Ms. Miles then interviewed Mr. McHenry and Ms. Anderson-Jones to find out what happened during the conference call on February 23, 2004, but failed to interview Mr. Khirawi. (Ex. 42: Miles depo, pp. 90-92).

48. Without having obtained Mr. Khirawi's side of the events of the February 23, 2004 conference call, Ms. Miles sent an e-mail to the same distribution list as Mr. Khirawi's request for an apology from Mr. McHenry, except that Ms. Miles added her manager, James Hoffman, and three Human Resources Managers, Joan Anderson, Terence Freeman, and Gayla George. (Ex. 13: February 23, 2004 e-mail string, Bates stamped number GETR0909).

50. In her February 23, 2004 e-mail, Ms. Miles apologized for Mr. Khirawi's e-mail

9

requesting the apology. (Ex. 13: February 23, 2004 e-mail string, Bates stamped number GETR0909).

51. Ms. Miles testified that she did not interview Mr. Khirawi to get his side of the events of the February 23, 2004 conference call because "I know Patrick and Tiffany, and I trust what they told me." (Ex. 42: Miles depo., p. 90).

52. Ms. Miles testified that she copied the three Human Resources managers on her February 23, 2004 e-mail because of their involvement in Mr. Khirawi's (unrelated) December 2003 - January 2004 complaint of discrimination. (Ex. 42: Miles depo., p. 92-93).

53. On March 1, 2004, Ms. Miles presented Mr. Khirawi with his annual performance review. Despite that she testified that Mr. Khirawi had been insubordinate by this time, the review again showed that Mr. Khirawi performed well. The performance review again shows that Mr. Khirawi usually exceeded Getronics's requirements in areas such as trust and respect for others; respect for <u>all team members</u>; being open to feedback from others; demonstrating commitment to team goals; helping others to find solutions; establishing and maintaining effective working relationships; and evaluating feedback from "audience' and replying in a professional manner. (Ex. 16: March, 2004 Getronics Performance Management Process Appraisal Form.)

54. Prior to sending him his review, Ms. Miles notified Mr. Khirawi by e-mail that she would fax it to him, what time she would fax it to him, and requesting confirmation of the correct fax number. (Ex. 15: March 1, 2004 e-mail).

55. On March 4, 2004, this time without advanced notice of the time that she would send it and without waiting for any confirmation from Mr. Khirawi, Ms. Miles faxed Mr. Khirawi a Written Reprimand relative to the events surrounding the February 23, 2004

conference call with Mr. McHenry and Ms. Anderson-Jones, to a fax machine to which other employees had access. Ms. Miles drafted the reprimand with Marthe Stanek, Getronics's general counsel. (Ex. 44: Khirawi aff.; Ex. 17: March 1, 2004 Written Reprimand; Ex. 42: Miles depo., p. 98).

56. Mr. Khirawi received the March 1, 2004 Written Reprimand when an unknown individual left the document on his desk with a note saying "bad boy." Mr. Khirawi was embarrassed. (Ex. 44: Khirawi aff.)

57. On March 4, 2004, Mr. Khirawi sent e-mail to Human Resources managers Terrence Freeman and Gayla George reporting that Ms. Miles's tone had changed since he reported her comment that the delay in his promotion was race based, and further asking that they investigate why she sent his reprimand to a public fax machine. (Ex. 19: March 4, 2004 e-mail).

58. Throughout his employment at Getronics, Mr. Khirawi never worked from home during his regular work hours. (Ex. 44: Khirawi aff.).

59. Mr. Khirawi and Ms. Miles had regular Monday morning meetings on the telephone to discuss the upcoming week's agenda, generally initiated when Ms. Miles would place a call to Mr. Khirawi on his office phone. They had such a meeting on Monday, March 15, 2004. (Ex. 44: Khirawi aff.).

59. On Thursday, March 18, 2004, Ms. Miles sent an e-mail to Mr. Khirawi asking him whether he was working from home Mondays. (Ex. 44: Khirawi aff.)

60. Ms. Miles inquiry into whether Mr. Khirawi was working from home Mondays confused Mr. Khirawi, given that they regularly communicated on his office phone on Mondays, and that he had never had any history of working from home. Mr. Khirawi replied to Ms.

Miles's inquiry by asking why she was asking whether he was working at home Mondays. (Ex. 44: Khirawi aff.).

61.  Mr. Khirawi, suspecting that Ms. Miles was setting him up by accusing him of working from home without permission, e-mailed Wayne Ogg, Getronics' Vice President of Human Resources, asking him for assistance and reporting that he felt that Ms. Miles was retaliating against him because of his earlier report of Ms. Miles comment that the delay in his promotion was race based. (Ex. 20: 3/18/04-3/19/04 e-mails).

62.  On March 19, 2004, Human Resources Manager Jimmy Thomas sent Mr. Khirawi an e-mail directing him to answer Ms. Miles inquiry as to whether he was working Mondays, and added a direction "not to use the words 'retaliation,' 'discrimination,' or 'harassment'" without using discretion, care and caution. (Ex. 21: 3/19/2004 e-mail).

63.  Mr. Thomas's March 19, 2004 e-mail left Mr. Khirawi unclear on what rights he had to report discrimination or retaliation to Getronics. Getronics did not clarify this despite Mr. Khirawi's requests. (Ex. 44: Khirawi aff.; Ex. 22: 3/19/04 e-mails).

64.  On or about March 22, 2004, Ms. Miles and Marthe Stanek, Getronics general counsel, drafted a Performance Improvement Plan relative to the events surrounding Ms. Miles's inquiry into whether Mr. Khirawi was working from home and Mr. Khirawi's requests for clarification on his rights to report discrimination. (Ex: 23: March 22, 2004 Performance Improvement Plan; Ex. 42: Miles depo, p. 106).

65.  The March 22, 2004 Performance Improvement Plan again directed Mr. Khirawi "not to use the words 'retaliation,' 'discrimination,' or 'harassment'" without using discretion, care and caution. (Ex: 23: March 22, 2004 Performance Improvement Plan).

66.  From March 29, 2004 through April 26, 2004, Mr. Khirawi was out on an

approved disability leave. (Ex. 24: Getronics Employee Input Document).

67. From April 26, 2004 through May 17, 2004, Mr. Khirawi worked one half days, with the other half days being part of an approved partial disability leave. (Ex. 25 and 26: Getronics Employee Input Documents)

68. On his first day back to full time after full then partial disability leave, Ms. Miles e-mailed Mr. Khirawi to tell him that she was only approving payment for 74 of the 80 hours he worked, without any further explanation. (Ex. 27: May 17, 2004 to May 18, 2004 e-mails, Bates stamp GETR0229).

69. When Mr. Khirawi asked why Ms. Miles was not approving payment for all of his work hours, she responded that her decision was based on "co-worker observation." In her 14 years as a manager at Getronics, Ms. Miles concedes that she had never previously subjected a subordinate to the same scrutiny of hours as she did with Mr. Khirawi. (Ex. 27: May 17, 2004 to May 18, 2004 e-mails, Bates stamp GETR0227-0228; Ex. 42: Miles depo., p. 110-111, 175-176).

70. Ms. Miles refused to approve payment of all of Mr. Khirawi's hours worked and determined that she would only approve 74 hours of 80 reported, despite that she never actually concluded whether Mr. Khirawi was actually misrepresenting his time. (Ex. 42: Miles depo, p. 110).

71. On May 17, 2004, as a result of Ms. Miles's arbitrary denial of payment of his full salary, Mr. Khirawi requested a transfer from under Ms. Miles's supervision, to no avail. (Ex. 28: May 17, 2004 e-mails between Mr. Khirawi and James Hoffman).

72. On May 18, 2004, as a result of Ms. Miles's arbitrary denial of payment of his full salary, Mr. Khirawi e-mailed Mr. Ogg (Getronics's Vice President of Human Resources), to again seek assistance relative to Ms. Miles's treatment of him, and indicating that he felt that his

religion and ethnicity have been the issue. (Ex. 29: May 18, 2004 e-mail).

73. On May 21, 2004, Getronics presented Mr. Khirawi with a Written Reprimand, drafted by Ms. Stanek, their attorney, and Human Resources, for alleged insubordination during the events surrounding Ms. Miles's denial of full payment for Mr. Khirawi's work hours. (EX. 30: May 21, 2004 Written Reprimand; Ex. 42, Miles depo., pp. 113-114).

74. On May 21, 2004, Ms. Miles e-mailed Mr. Khirawi that he will no longer be allowed a four day work week, as the rest of her subordinate employees were permitted to work, and as she had offered in March, 2003. (Ex. 44: Khirawi aff.).

75. On May 21, 2004, Ms. Miles directed Mr. Khirawi to turn in a laptop computer that he had previously been issued. Ms. Miles concedes that this direction was not made for any legitimate business purpose of Getronics but rather was a response to the human resources issues they had with Mr. Khirawi. Ms. Miles could not comment on whose idea it was to take the laptop computer away from Mr. Khirawi, other than to say that the attorney client privilege prohibited her from answering that question. (Ex. 42: Miles depo., p. 115-117).

76. On June 8, 2004, Mr. Khirawi filed a charge of discrimination and retaliation against Getronics with the Equal Opportunity Employment Commission ("EEOC"). (Ex. 32: EEOC charge).

77. On August 4, 2004, the EEOC held a mediation session to attempt to resolve the dispute surrounding Mr. Khirawi's EEOC charge. The mediation was not successful. (Ex. 44: Khirawi aff.).

78. On August 5, 2004, Mr. Khirawi e-mailed a simple suggestion to help improve their team's overall performance. (Ex. 53: August 5, 2004 e-mail).

79. On August 5, 2004, Ms. Miles replied to Mr. Khirawi's suggestion for

improvement of their group's performance by telling Mr. Khirawi that his conduct was unacceptable, and charging that he had failed to return a co-worker's calls, and to refrain from responding to her. (Ex. 34: August 5, 2004 e-mail).

80. Mr. Khirawi denied having failed to return his co-workers calls, and initiated an electronic inquiry into Getronics' phone system to determine whether he received any calls that he did not return. Ms. Miles terminated the electronic inquiry. (Ex. 35: August 6, 2004 e-mails).

81. In August 2004, Getronics assigned Jamie Graceffa, a Human Resources manager, to handle Mr. Khirawi's personnel issues. (Ex. 43: Graceffa depo., p. 44; Ex. 44: Khirawi aff.).

82. Getronics did not make Mr. Graceffa aware of any aspect of the history of Mr. Khirawi's employment, his complaints of discrimination, or his performance, prior to assigning him to handle Mr. Khirawi's personnel issues. (Ex. 43: Graceffa depo., pp. 31-32, 44-49, 52-54, 64).

83. On August 17, 2004, James Hoffman e-mailed Mr. Khirawi indicating that he needed to meet with him and with Mr. Graceffa to go over performance expectations. Mr. Hoffman did not indicate specifically the purpose of the need for a meeting, or that there was going to be a document associated with the meeting. (Ex. 36: August 17, 2004 e-mail).

84. On August 19, 2004, Mr. Khirawi met with Mr. Graceffa in person and with Mr. Hoffman by telephone, to go over a plan for him to submit weekly reports of his work, to maintain daily activity logs, and to e-mail Mr. Graceffa his daily arrival and departure information. Graceffa did not present Mr. Khirawi with Performance Improvement Plan documentation. Mr. Graceffa claims that he did present Mr. Khirawi with a Performance Improvement Plan document. (Ex. 44: Khirawi aff.; Ex. 36: Performance Improvement Plan

15

dated August 19, 2004; Ex. 43: Graceffa depo., p. 71).

85. Mr. Khirawi submitted weekly reports of his work, maintained daily activity logs, and e-mailed Mr. Graceffa his daily arrival and departure information in compliance with all requests made during the meeting on August 19, 2004. (Ex. 44: Khirawi aff.).

86. On September 24, 2004, Getronics's general counsel, Marthe Stanek, submitted Getronics's Position Statement to the EEOC relative to Mr. Khirawi's June, 2004 EEOC charge. (Ex. 47: Getronics's September 24, 2004 EEOC Position Statement).

87. On September 24, 2004, Mr. Graceffa e-mailed Mr. Khirawi a warning that he was not complying with the August 19, 2004 Performance Expectations document by allegedly failing to e-mail in his arrival and departure times. (Ex. 37: September 24, 2004 e-mail).

88. Mr. Khirawi contends that he did comply with the requirement that he e-mail Mr. Graceffa his arrival and departure, but that he did so pursuant to the verbal instructions given on August 19, 2004, and never received any Performance Expectations document that day. (Ex. 44: Khirawi aff.).

89. On October 8, 2004, the EEOC dismissed Mr. Khirawi's EEOC charge and sent notice of the decision to the parties. (Ex. 39: October 8, 2004 EEOC notice).

90. On October 12, 2004, Mr. Graceffa informed Mr. Khirawi that he wanted to meet with him. (Ex. 40: October 12, 2004 e-mails).

91. On October 26, 2004, Mr. Graceffa met with Mr. Khirawi, for the purpose of issuing him a Written Reprimand. Mr. Khirawi asked that the meeting be recorded. After consulting with counsel for Getronics, Ms. Stanek, Mr. Graceffa denied the request to record the meeting. (Ex. 43: Graceffa depo. p. 84-85; Ex. 41: October 26, 2004 Written Reprimand).

92. During the meeting by conference call on October 26, 2004, Mr. Graceffa was

16

rude, belligerent, and was yelling at Mr. Khirawi. Mr. Khirawi stayed calm, but did deny Mr. Graceffa's repeated assertions that he gave Mr. Khirawi the August 19, 2004 Performance Expectations document on August 19. (Ex. 44: Khirawi aff.).

93. Getronics terminated Mr. Khirawi on October 26, 2004, within 15 or 20 minutes after the call with Mr. Graceffa.

94. Getronics lied about the reason for and circumstances surrounding its termination of Mr. Khirawi when, in correspondence with the Massachusetts Department of Employment and Training, it represented that Mr. Khirawi was terminated when he "became irate and started calling everyone in the room a liar…" and "…continued to talk over everyone in the room." Getronics now acknowledges that there was no one in the room during Mr. Khirawi's meting with Mr. Graceffa on October 26, 2004. (Ex. 48: letter to Massachusetts Department of Employment and Training).

                                         For the plaintiff,

                                         /s/     Sol J. Cohen
                                         Sol J. Cohen
                                         BBO # 630776
                                         COHEN & SALES
                                         43 Thorndike Street
                                         Cambridge, MA 02141
                                         (617) 621-1151

**CERTIFICATE OF SERVICE**

    I, Sol J. Cohen, attorney for the plaintiff, Aalaeldin Khirawi hereby certify that on this 5th day of April, 2007, I filed this document through the Court's ECF system, and will be sent electronically to the registered participants who are counsel of record on this matter.

                                        /s/     Sol J. Cohen
                                        Sol J. Cohen