# EXHIBIT 44

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11877-WGY

_____
                                    )
AALAELDIN KHIRAWI                   )
                                    )
       Plaintiff                    )
                                    )
v.                                  )
                                    )
GETRONICS WANG CO., LLC             )
D/B/A GETRONICS                     )
                                    )
       Defendants                   )
_____)

**<u>PLAINTIFF, AALAELDIN KHIRAWI'S AFFIDAVIT IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

NOW COMES the Plaintiff, Aalaeldin Khirawi, and hereby states and deposes as follows:

1. My name is Aalaeldin Khirawi. I am a United States citizen originally from the Sudan. I am an African Muslim. I reside with my wife and three children in Manchester New Hampshire.

2. I began employment with the defendant, Getronics Wang Company, LLC (hereinafter "Getronics"), in approximately May, 1999, as a temporary employee.

3. Getronics hired a Caucasian temporary employee named Gerald Tracy as a permanent employee despite that Mr. Tracy began his temporary employment four months after me.

4. After more than one year of temporary employment during which my supervisors provided me with positive feedback, I began to suspect that Getronics's failure to hire me as a permanent employee was race and religion based; therefore, in August, 2000, I enlisted aid from a Washington based lobbying group, Council on American-Islamic Relations, to communicate to Getronics my suspicion to Getronics.

5.	I did not receive any warnings or other personnel actions for insubordination or failing to communicate with my superiors or co-workers in an unprofessional manner at anytime between my May 1999 hire as a temporary employee and early 2004, over four and one-half years later.

6.	In May, 2001, Getronics chose me and others for an off site project called the "AERO" project. I began to train for this project then.

7.	Within weeks of the terrorist attack of September 11, 2001, Getronics removed me from the AERO project, under highly disputed circumstances.

8.	Without explanation from Getronics, I remained without a place to work for a period of approximately seven weeks in the fall of 2001, in essence, a paid leave of absence.

9.	I suspected that Getronics's decisions to remove me from the AERO project and to maintain me on leave of absence soon after the events of September 11, 2001, were based on my Muslim religion and ethnicity.

10.	In mid 2002, Paul Galipeau, Mr. Khirawi's manager, recommended me for a promotion to a Quality Assurance Representative position.

11.	In October 2002, Ruby Miles, a Houston based Quality Manager for Getronics, met with me at Getronics's Tewksbury, Massachusetts office (where I worked), for the purpose of interviewing me for a position of Quality Assurance Representative.

12.	Ms. Miles offered me the position of Quality Assurance Representative during her meeting with me in October, 2002, at an annual salary of $40,000.00; I accepted the position.

13.	In February, 2003, Getronics, via Mr. Galipeau, my manager in Tewksbury, asked me to begin performing the duties of the Quality Assurance Representative position.

14.	I agreed to perform the duties of the Quality Assurance Representative position despite that my salary would remain at $27,000.00, in order to assist Getronics and to help further my

career with Getronics. I performed those duties at my $27,000 salary from February, 2003 until September, 2003.

15.     On March 19, 2003, in the context of e-mails between myself and Ms. Miles about the status of my delayed promotion, Ms. Miles, an African American woman, told me that she could identify and feel my pain, having been born and raised in the 1950's, 60's and 70's; I understood this to mean that the delay in my promotion may have been somehow linked to my race and religion

16.     In June, 2003, I discussed the ongoing delay in my promotion (seven months since the offer as of that time) with Ms. Miles during a Tewksbury training session that we both attended; Ms. Miles told me that she thought that the delay in his promotion and salary raise was due to racial factors, saying something like "it is all racial Aalaeldin, it is because you are black, welcome to the club."

17.     At the time of Ms. Miles's comment in June, 2003, I was unsure whether Ms. Miles was simply commiserating with me in an effort to make me feel better, or whether Ms. Miles had actual knowledge of race based action on the part of Getronics upper management; therefore, I did not immediately report the comment to any superiors or Human Resources.

18.     In December 2003, I submitted a request for tuition reimbursement for IT classes that I took, which I felt were subject to reimbursement under Getronics's policy and fringe benefits package.

19.     Ms. Miles and Terrence Freeman, a Human Resources manager, denied my request for tuition benefits. Ms. Miles directed me to Human Resources manager Gayla George if I wanted to discuss the issue further.

20. Again faced with unclear reasons for negative personnel action, I suspected that my race and religion were a factor in the denial of his tuition reimbursement because of the history I had at Getronics, including the long period of temporary employment as compared with an equivalent Caucasian employee; the removal of me from the AERO project following the events of September 11, 2001; the virtually unexplained forced leave of absence following the events of September 11, 2001; the eleven month delay in my promotion after being offered the position; and my manager's comment that the delay in my promotion was race based.

21. In December 2003 and January 2004, Joan Anderson, a Tewksbury based Human Resources representative for Getronics, investigated my complaint of discrimination.

22. On January 22, 2004, Ms. Anderson held a meeting with myself, Ms. Miles, and Ms. George, during which Ms. Miles admitted that she had told me that the delay in my promotion may have been race based, but that she 'did not mean it.' (Ex. 44: Khirawi aff.).

23. In late February, 2004, Ms. Miles assigned me to lead a February 23, 2004 conference call meeting with Patrick McHenry and Tiffany Anderson-Jones, co-workers based in Houston, relative to a project designed to improve their quality assurance process. Ms. Miles did not tell me that Mr. McHenry (with whom I had never previously interacted), was actually supposed to lead the project and the meeting.

24. When I tried to take the lead in the meeting with Mr. McHenry and Ms. Anderson-Jones, I met unexplained resistance. The meeting turned into something of a power struggle, and ultimately Mr. McHenry told me to "shut up." We then ended the conference call.

25. On March 4, 2004, without advanced notice of the time that she would send it and without waiting for any confirmation from me, Ms. Miles faxed a Written Reprimand relative to

the events surrounding the February 23, 2004 conference call with Mr. McHenry and Ms. Anderson-Jones, to a fax machine to which other employees had access.

26. I received the March 1, 2004 Written Reprimand when an unknown individual left the document on my desk with a note saying "bad boy." I was embarrassed.

27. Throughout my employment at Getronics, I never worked from home during my regular work hours.

28. Ms. Miles and I had regular Monday morning meetings on the telephone to discuss the upcoming week's agenda, generally initiated when Ms. Miles would place a call to me on my office phone. We had such a meeting on Monday, March 15, 2004.

29. On Thursday, March 18, 2004, Ms. Miles sent an e-mail to me asking me whether I was working from home Mondays.

30. Ms. Miles's inquiry into whether I was working from home Mondays confused me, given that we regularly communicated on my office phone on Mondays, and that I had never had any history of working from home. I replied to Ms. Miles's inquiry by asking why she was asking whether I was working at home Mondays. Ms. Miles refused to answer my question. I suspected that Ms. Miles was setting me up by accusing me of working from home without permission.

31. Human Resources representative Jimmy Thomas's March 19, 2004 e-mail to me left me unclear on what rights I had to report discrimination or retaliation to Getronics. Getronics did not clarify this despite my requests.

32. On May 21, 2004, Ms. Miles e-mailed me that I will no longer be allowed a four day work week, as the rest of her subordinate employees were permitted to work, and as she had offered me in March, 2003.

33. On August 4, 2004, the EEOC held a mediation session to attempt to resolve the dispute surrounding my June 8, 2004 EEOC charge. The mediation was not successful.

34. In August 2004, Getronics assigned Jamie Graceffa, a Human Resources manager, to handle my ongoing personnel issues.

35. On August 19, 2004, I met with Mr. Graceffa in person and with Mr. Hoffman by telephone, to go over a plan for me to submit weekly reports of my work, to maintain daily activity logs, and to e-mail Mr. Graceffa my daily arrival and departure information. Graceffa did not present me with Performance Improvement Plan documentation.

36. I submitted weekly reports of my work, maintained daily activity logs, and e-mailed Mr. Graceffa my daily arrival and departure information in compliance with all requests made during the meeting on August 19, 2004.

37. I did comply with the requirement that I e-mail Mr. Graceffa my arrival and departure, but that I did so pursuant to the verbal instructions given to me on August 19, 2004, as I did not receive any Performance Expectations document that day.

38. I met with Mr. Graceffa again on October 26, 2004. During that meeting, Mr. Graceffa was rude, belligerent, and was yelling at me. I stayed calm, but did deny Mr. Graceffa's repeated assertions that he gave me the August 19, 2004 Performance Expectations document on August 19, 2004.

Signed under the pains and penalties of perjury this 4th day of April, 2007.

/s/ Aalaeldin Khirawi
Aalaeldin Khirawi

Case 1:05-cv-11877-WGY    Document 23    Filed 04/05/2007    Page 8 of 8