UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AALAELDIN KHIRAWI,
Plaintiff

v.

GETRONICS WANG CO., LLC,
a/k/a/ and d/b/a GETRONICS,
Defendants

CIVIL ACTION NO. 05-11877WGY

## REPLY OF DEFENDANT GETRONICS TO
## PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

Defendant, Getronics Wang Co., LLC, a/k/a and d/b/a Getronics ("Getronics"), submits this reply to Plaintiff's opposition to summary judgment to demonstrate that there are no material facts in dispute and that it is entitled to judgment as a matter of law. In particular: (1) Plaintiff does not dispute the material facts regarding Getronics' bases for its discipline and termination of Plaintiff; (2) temporal proximity between a protected activity and an adverse employment action, alone, is not sufficient to set forth a *prima facie* case of retaliation; (3) Plaintiff's failure to compare himself to similarly situated employees negates his disparate treatment claim; and (4) Plaintiff has failed to set forth facts sufficient to establish Getronics' stated reasons for its actions are pretextual.

In his Memorandum in Support of his Opposition to Summary Judgment ("Plaintiff's Opposition"), Plaintiff failed to acknowledge or address the fact that he freely admitted at his deposition that he was insubordinate and often acted inappropriately at Getronics.[1] Indeed, in reading Plaintiff's Opposition, one would not know he engaged in numerous incidents of blatant insubordination, even though his emails and his deposition testimony confirm such behavior. In reality, however, Plaintiff was disciplined and eventually discharged after many months of

---

[1] The closest Plaintiff comes to admitting his blatant and continuous insubordination are his references to "unnecessary confrontations" on page 18 of Plaintiff's Opposition.

insubordinate and other inappropriate conduct toward his manager and other superiors. As Plaintiff does not dispute he engaged in the behavior in question, Getronics is entitled to summary judgment.

## ARGUMENT

### I. PLAINTIFF DOES NOT OFFER ANY MATERIAL FACTS IN DISPUTE.

In opposing summary judgment, Plaintiff must set forth specific facts showing that there is a genuine issue of fact for trial. F.R.C.P. 56(e). Notwithstanding this obligation, Plaintiff does not dispute Getronics' material facts.[2] For example, Plaintiff does not dispute that he engaged in the insubordinate behavior set forth in Defendant's Statement of Undisputed Material Facts, which led to his discipline and termination. (SOF ¶¶ 15-20, 22-26, 28-29, 34, 36-39, 45-48, 50, 56-59). As a result, Defendant is entitled to summary judgment. See Tate v. Dep't of Mental Health, 419 Mass. 356, 362 (1995)(upholding summary judgment to employer on the basis of evidence clearly supporting the charge of insubordination against the plaintiff employee, where the plaintiff "never contested" the insubordination).

### II. PLAINTIFF CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN ANY PROTECTED ACTIVITY AND DEFENDANT'S ACTIONS.

In order to address the "causal connection" requirement of the *prima facie* standard for retaliation, Plaintiff sets forth a chronology of events intended to show that Plaintiff's participation in protected activities resulted in adverse employment actions. Plaintiff's

---

[2] Although Plaintiff submitted an 18 page, 94 paragraph "Statement of Material Facts In Dispute," the overwhelming majority of the facts stated are consistent with those stated by Defendant in its "Statement of Material Facts Not In Dispute." With respect to the few facts which the sides do dispute, they are not material and therefore do not limit Defendant's ability to obtain summary judgment. A "material fact" is a "contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.'" Sherwood v. Prison Health Servs., 2003 U.S. Dist LEXIS 22208, *44 (D. Me., December 10, 2003) (quoting Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995))).

chronology fails to establish a causal connection for several reasons. First, many of the incidents in question were not protected activities, and the only connection the alleged adverse actions had with these incidents was that they occurred afterwards.[3] The "mere fact that an adverse employment action followed protected conduct is not sufficient to make out a causal link between the two events." Iorio v. Aramark Servicemaster, 2005 U.S. Dist. LEXIS 40290, at *68 (D. Mass. 2005). Timing alone, without other evidence of a causal connection, renders a plaintiff's claim subject to summary judgment. See, e.g., Roberson v. Alltel Info. Servs., 373 F.3d 647, 655-56 (5th Cir. 2004).

Second, Plaintiff distorts the record in an attempt to prove a causal connection. For example, Plaintiff alleges that Mr. Graceffa requested a disciplinary meeting with Plaintiff on October 12, 2004, after Getronics received the EEOC's October 8, 2004 dismissal. (Plaintiff's Opposition, p. 14). However, there is no causal connection between the EEOC dismissal and the request for a meeting, because Mr. Graceffa first told Plaintiff he would be receiving this warning on September 30, 2004, *before the EEOC dismissal.* (Defendant's Statement of Materials Facts in Not in Dispute ("SOF") ¶48).

Third, the chronology is skewed by the fact that Plaintiff abused Getronics' complaint procedure by repeatedly alleging retaliation and discrimination – even when he had no basis for doing so[4] or his allegation had already been investigated.[5] Title VII does not afford an employee

---

[3] For example, Plaintiff alleges that the EEOC's dismissal of his June 2004 charge was protected activity that led to his termination. Plaintiff also alleges that Ms. Miles asking him if he was working from home on Mondays is an adverse employment action. Plaintiff's Opposition, pp. 13-14. The EEOC dismissal is not a protected activity by Plaintiff, nor is asking him if he is working from home on Mondays an adverse action.

[4] For example, Plaintiff alleged Getronics' Human Resources employee Terrence Freeman treated him with "bias," however at his deposition, he admits that Mr. Freeman did not discriminate against him. (SOF, ¶¶ 11-12).

unlimited license to complain at any and all times. Pagana-Fay v. Washington Suburban Sanitary Comm., 797 F. Supp. 462, 471-75 (D. Md. 1992). See also Robbins v. Jefferson County Sch. Dist., 186 F.3d 1253, 1259 (10th Cir. 1999) (employee who "lodged frequent, voluminous, and sometimes specious complaints" held not to have engaged in protected activity).

Without admitting that each and every workplace interaction involving Plaintiff amounts to an adverse employment action, as set forth below Getronics has legitimate, non-retaliatory reasons for its actions during Plaintiff's employment. See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997)(the defendant's "burden of production is not onerous"), citing Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 442 (1995).

Although Plaintiff's federal claims are limited to actions taken by Getronics subsequent to June 11, 2004,[6] to the extent Plaintiff's state law claims are not similarly time-barred, Getronics addresses Plaintiff's conduct prior to June 11, 2004 herein. For an examination of the legitimate non-retaliatory bases for Defendant's actions after June 11, 2004, see Getronics' Memorandum of Law in Support of its Motion for Summary Judgment, at pages 7-12.

### A.  March 1, 2004 Written Reprimand

Plaintiff received the March 1, 2004 Written Reprimand after: (1) he exhibited inappropriate and insubordinate behavior in emails dated February 23, 2004 (SOF, ¶¶15-18)[7] and

---

[5] Plaintiff continued to repeatedly complain about the alleged comment made by Ms. Miles in June 2003, even though it was fully investigated by Getronics in January 2004. (SOF, ¶¶13-14).

[6] Plaintiff failed to bring suit within 90 days of receiving his October 8, 2004 right to sue letter from the EEOC. Davis v. Sears, 708 F.2d 862 (1st. Cir. 1983)(upholding dismissal of Title VII claim filed 2 days after the 90 day statute of limitations).

[7] Regarding this email exchange, Plaintiff alleges that Ms. Miles "set him up" by telling him that he was leading the call when it was Mr. McHenry who was supposed to lead the call. Plaintiff's Opposition, p. 12. Plaintiff's argument is flawed for several reasons. First, there is no support in the record that Ms. Miles knew Mr. McHenry was to lead the call when she told Plaintiff otherwise. Second, it is difficult to believe that Ms. Miles envisioned Plaintiff would

(2) he told his supervisor Ms. Miles in a February 25, 2004 telephone conversation that he did not trust her judgment and that she was "weak". (SOF, ¶18).

### B. March 19, 2004 Cease and Desist Email From Getronics' Human Resources and Subsequent Performance Improvement Plan

On March 9, 2004, Plaintiff emailed a "rebuttal" to Ms. Miles in response to the March 1 written reprimand, in which he reiterated that he did not trust her judgment as a manager and that she was "weak". (SOF, ¶19). On March 18, 2004, Plaintiff refused to answer Ms. Miles' simple e-mail inquiry as to whether he was working from home on Mondays.[8] (SOF, ¶22). Plaintiff received an email from Jimmy Thomas of Getronics Human Resources on March 19, 2004 requesting that he: (1) immediately respond to Ms. Miles' inquiry as to whether he was working from home on Mondays, (2) cease his deluge of emails, (3) communicate with his manager in a professional and measured manner, and (4) exercise discretion, care and caution before alleging discrimination, harassment or retaliation.[9] (SOF, ¶¶23-24).

On March 19 and 20, 2004, notwithstanding the directive to Plaintiff not to respond to the March 19 cease and desist email, Plaintiff emailed several times in response. (SOF ¶24). Accordingly, on March 23, 2004, Plaintiff was provided a Performance Improvement Plan

---

act so inappropriately so as to have thought to "set him up". Third, Plaintiff did not have to respond in the inappropriate and insubordinate way that he did. Indeed, he could have simply answered "No," as he did when ordered to respond to this question by Human Resources. Because he did not respond appropriately, he needs to accept responsibility for the way he chose to act.

[8] Notwithstanding Plaintiff's argument that this inquiry was a "baseless accusation", it is uncontroverted that (1) Ms. Miles communicated this inquiry to Plaintiff as a question, rather than an accusation (SOF, ¶22); and (2) Ms. Miles asked this question because Plaintiff's co-workers had expressed difficulty in locating Plaintiff at times. (Miles Tr., p. 100).

[9] Plaintiff alleges that Getronics' request that he not abuse the Company's complaint procedure is retaliatory. Plaintiff's Opposition, p. 16. That is not the case for several reasons. First, he was abusing the Company's complaint procedure by continuing to insist every single interaction was retaliation or discrimination. Second, Getronics has a right to request that its employees not abuse the complaint process. Third, this email did not restrict his rights, as he filed a charge of discrimination with the EEOC only 13 weeks later. (SOF, ¶35).

5

("PIP") reiterating the issues set forth in the March 19 cease and desist email and giving Plaintiff further directives for the future. (SOF, ¶25).

### C. May 21, 2004 Written Reprimand and Taking Away Certain Privileges

On May 17 and 18, 2004, Plaintiff once again disobeyed Ms. Miles' directive that a discussion regarding the reporting of his hours was "closed."[10] (SOF, ¶¶28-29). Plaintiff replied with another insubordinate email to his supervisor stating, "it is clear that you are out of control and now this conversation is closed."[11] (SOF ¶¶28-29). Since he was still on a PIP and he had continued to engage in some of the same behavior addressed in the PIP, he received another written reprimand on May 21, 2004.[12] (SOF, ¶31).

In conjunction with this reprimand, Getronics modified Plaintiff's work schedule and asked Plaintiff to return his company laptop computer. (SOF, ¶¶33-34). Plaintiff was no longer permitted to work a four-day work week or keep a Company laptop computer because: (1) these were privileges (rather than rights), and (2) by virtue of his insubordination and receipt of a PIP,

---

[10] While Getronics admits that it may have monitored Plaintiff's working hours more closely, there were legitimate non-retaliatory reasons for doing so. Plaintiff worked in Massachusetts and was managed by Ms. Miles in Texas. (SOF, ¶8). He was also the only employee Ms. Miles ever monitored remotely. (SOF, ¶8). Therefore, it was necessary to keep closer tabs on his comings and goings, since Ms. Miles did not know exactly when he was at his desk. Second, as Ms. Miles testified (and Plaintiff has not refuted), other Getronics employees in Tewksbury reported to Ms. Miles that he was not working the exact hours he was reporting. (SOF, ¶28). Third, by this time, Plaintiff had already received a PIP and multiple warnings, therefore it was reasonable for Getronics to increase its scrutiny of him.

[11] Incredibly, in his opposition, Plaintiff questions why he received a written reprimand on May 21, for "alleged insubordination." Plaintiff's Opposition, p. 7. Based on this blatantly rude and insubordinate email, it is clear that Getronics had a legitimate non-retaliatory basis for giving Plaintiff the written warning at this time, especially in light of his prior insubordination.

[12] Notwithstanding Plaintiff's speculation otherwise, the May 21 reprimand resulted from the May 18 insubordinate email to Ms. Miles, not Plaintiff's May 18 email to Wayne Ogg.

6

Plaintiff was no longer eligible for these privileges.[13] (SOF, ¶34; Miles Tr., p. 116). Plaintiff argues that Ms. Miles admitted that Getronics had no legitimate business purpose for taking back the computer. This is a mischaracterization of the facts. What Ms. Miles testified is that Getronics did not necessarily need the computer back. However, taking privileges away from an insubordinate employee with a pending PIP is clearly a legitimate business purpose.

### III. PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH AN INSTANCE OF DISPARATE TREATMENT.

In Plaintiff's Opposition, he argues he was subject to "disparate treatment" by Getronics. Because Plaintiff does not produce evidence that he was treated differently than similarly situated Getronics employees, he is unable to show disparate treatment. See Matthews, 426 Mass. at 129-34. "[I]n order to establish that that the defendant's stated reasons for terminating him were pretext, the plaintiff must 'identify and relate specific instances where persons similarly situated "in all relevant aspects" were treated differently.'" Id. at 129, citing Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989). In order to satisfy this standard, Plaintiff must identify other employees to whom he is similarly situated "in terms of performance, qualifications and conduct, 'without such differentiating or mitigating circumstances that would distinguish' their situations." Matthews, 426 Mass. at 130, citing Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995).

Here, Plaintiff clearly has not satisfied his burden of proving disparate treatment. Indeed, the *only* support Plaintiff alleges is Ms. Miles' deposition testimony that Plaintiff was the only person she supervised who was required to notify his supervisors when he was at work.

---

[13] As Ms. Miles testified at her deposition, when she refers to taking back the laptop because of Plaintiff's "HR issues," she is talking about his insubordination, not (as Plaintiff argues) his complaints of alleged discrimination. (Miles Tr., p. 116).

Plaintiff's Opposition, p. 17. Plaintiff fails, however, to set forth any record evidence that there were any Getronics employees similarly situated to him. Consequently, he cannot satisfy his burden of proving that there were other similarly situated Getronics employees who were not required to report their comings and goings. In addition, there is no evidence in the record that any other Getronics employee ever acted as insubordinately as Plaintiff and was not disciplined or terminated. See Matthews, 426 Mass. at 129-34 (Plaintiff failed to establish disparate treatment even though she submitted evidence that other (white) employees with similar positions and pay were not terminated for violating company rules, including one employee who appeared to engage in the same conduct (theft of company product) as the plaintiff). Therefore, Plaintiff cannot establish that he was subject to disparate treatment. See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 43-44 (1st Cir. 2001)(finding no evidence of pretext in upholding employer's summary judgment where plaintiff employee failed to prove she was subject to disparate treatment). Contra Chungchi Che v. MBTA, 342 F.3d 31, 38 (2003)(plaintiff able to demonstrate disparate treatment with "documentary and testimonial evidence" from "[m]ultiple witnesses" that, unlike the plaintiff, other (white) employees were not disciplined for the same conduct).

### IV. PLAINTIFF HAS FAILED TO SET FORTH FACTS SUFFICIENT TO ESTABLISH GETRONICS' STATED REASONS FOR ITS ACTIONS ARE PRETEXTUAL.

In the final analysis, even if Plaintiff can satisfy his *prima facie* burden, he has not produced sufficient evidence of pretext to rebut Defendant's legitimate non-retaliatory rationale for its decisions. Ronda-Perez v. Banco Bilbao Vizcaya Argentaria, 404 F.3d 42, 45 (1st Cir. 2005) ("pretext means deceit used to cover one's tracks."). Getronics does not need to prove that it was correct in its belief regarding its reasons for taking action against the Plaintiff, only that it

did so believe. Tate, 419 Mass. at 362. The burden of persuasion as to pretext remains with the employee at all times. Id. McMillan v. Mass. Soc. Prev. of Cruelty to Animals, 140 F.3d 288, 309-10 (1st Cir. 1998) (affirming summary judgment for employer on plaintiff's retaliation claim because plaintiff had not demonstrated that the explanation for her termination was pretextual).

Here, Plaintiff makes several arguments in support of pretext. As set forth below, none of these arguments are persuasive. First, Plaintiff argues that pretext can be shown by disparate treatment. As set forth above, infra pp. 7-8, Plaintiff cannot claim disparate treatment, because he has produced no evidence of similarly situated Getronics employees. "The plaintiff does not carry his burden of demonstrating pretext on a motion for summary judgment where he provides merely 'sketchy evidence lacking a sufficient foundation for a legally relevant comparison' of allegedly similarly situated employees. Matthews, 426 Mass. at 131, n. 6, citing Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995).

Second, Plaintiff alleges that Getronics stated reasons are "unworthy of credence". In support of this argument, Plaintiff gives two examples. First, he questions his termination on October 26, 2004 immediately after a teleconference during which he claims he was "not at all insubordinate." Plaintiff's Opposition at 15. Plaintiff's insubordination during the October 26, 2004 call with Mr. Graceffa is not a disputed fact. Indeed, Plaintiff freely admits that he continued to argue the issue of when he received the August 19 written reprimand, even after Mr. Graceffa insisted that he stop arguing this point and warned Plaintiff that his job was in jeopardy if he continued to argue this issue. (SOF, ¶¶54-59). Thus, contrary to Plaintiff's argument, it is undisputed that he was insubordinate on October 26, 2004. Second, Plaintiff attempts to use an inadmissible document sent to the Department of Education and Training in order to show that Getronics was not consistent in explaining its rationale for terminating his employment.

9

Plaintiff's Opposition, p. 9, footnote 6. This document is the subject of a pending motion to strike. Even if it were admissible, it does not support an argument of pretext, because the document was drafted by a third party and not Getronics, and the Company never changed its reason for terminating plaintiff's employment – continuous and blatant insubordination.

Third, Plaintiff claims that Getronics' "uncontrolled subjectivity" assists his pretext argument. In support of this argument, Plaintiff points to two incidents. First, he questions Ms. Miles' failure to interview Plaintiff in February of 2004 after she spoke with Mr. McHenry. This is not an example of "uncontrolled subjectivity," as she also interviewed Ms. Anderson-Jones, who corroborated Mr. McHenry's version of the events. (SOF, ¶15). Plaintiff's second example concerns the return of the laptop computer. This is also not an example of "uncontrolled subjectivity". Rather, as set forth above, it was a privilege taken away because of Plaintiff's insubordination, multiple warnings, and refusal to abide by same.

Plainly put, the Plaintiff does "not present any evidence to show that the [Defendant] terminated h[im] for any reason other than h[is] insubordination." Tate, 419 Mass. at 365. Therefore, Defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its memorandum in support of summary judgment, Getronics respectfully requests that the Court grant its motion for summary judgment on all counts of Plaintiff's Complaint.

Respectfully submitted,

GETRONICS WANG CO., LLC,
a/k/a/ and d/b/a GETRONICS
By its attorneys,


/s/ Erik J. Winton
Andrew C. Pickett, BBO # 549872
Erik J. Winton, BBO #600743
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated: April 17, 2007

### CERTIFICATE OF SERVICE

This hereby certifies that on this 17th day of April, 2007, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Erik J. Winton
Jackson Lewis LLP